CHARLES MEEKS, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—0777

Opinion filed December 31, 1990.

Schultz & Winick, of Chicago (Barry A. Schultz, of counsel), for appellant.

Roland Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

The plaintiff, Charles Meeks, appeals from an order of the circuit court of Cook County which on administrative review affirmed the Board of Review of the Illinois Department of Employment Security's (hereafter Board's) denial of plaintiff's application for unemployment benefits. On appeal the plaintiff contends that the circuit court erred in affirming the Board's decision because it was based on inadmissible hearsay evidence and because plaintiff's conduct did not constitute misconduct pursuant to section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(A)).

After a claims adjudicator found that plaintiff was ineligible for unemployment benefits because plaintiff was discharged for misconduct connected with work, a hearing was held on plaintiff's claim before a hearings referee. The plaintiff testified that he worked for Telemation Production, Inc. (hereafter Telemation), from May 1987 until June 2, 1989. Before his discharge he was involved in a dispute with a fellow employee, Mr. Patel. Plaintiff explained the circumstances of the dispute, recalling that he was on an evening break in the company kitchen area eating lunch and watching a basketball game on television.

During this time Mr. Patel came into the kitchen to answer a telephone call. Without speaking to plaintiff, Patel grabbed the television remote control unit from plaintiff's hand and turned the television off. Plaintiff then grabbed it back, and when Patel grabbed it once again, the remote unit hit plaintiff on the hand, smashing his finger. After being hit on the hand with the remote unit, plaintiff grabbed Patel by

the shirt, tearing it in the process. When Patel tried to wrest away, he ran into a support beam.

Plaintiff testified that he never had a previous dispute with this co-worker and was not under the influence of alcohol during this incident or armed with a weapon. Plaintiff did, however, have a nonfunctional stun gun on the premises.

Plaintiff testified that from 5:30 to 7:30 p.m. that day he had attended a going-away party for a fellow employee where he drank one beer and some champagne. Other company employees were at the party and were drinking also. Plaintiff conceded that he had received a prior notice from Telemation in February 1988 that the result of any alcohol use on his part would result in dismissal. It was plaintiff's impression that it was company policy not to allow drinking on the premises, although the practice occurred.

Cindy Pilger, plaintiff's direct supervisor at Telemation, testified as to the contents of Patel's written statement. An objection to this was made on the basis that it was hearsay. This objection was overruled. The hearings referee admitted it "for what its worth." Pilger testified that plaintiff admitted to an altercation with Patel but never stated that Patel had hit him. Pilger had heard rumors that plaintiff had a stun gun but did not know that he was carrying it on the job.

Ms. Pilger testified that she had a prior conversation with plaintiff regarding alcohol use. Ms. Pilger testified that it is company policy that Telemation did not want employees consuming alcohol on its premises and did not want employees coming to work in a condition where their job performance would be impaired by alcohol use. She said that the party on the evening of the altercation was not sponsored by Telemation, nor was it held on the premises.

Ms. Pilger testified that in the past Telemation had problems with plaintiff's attitude relating to other employees. Ms. Pilger and plaintiff discussed plaintiff's relations with other employees on an ongoing basis. Several days after the altercation with Patel, Ms. Pilger noticed a small wound on Patel's forehead, and he said that he had been slammed up against a pole.

Henry Tate was the general manager of Telemation. He testified that it was he who made the decision to discharge plaintiff because of the altercation between plaintiff and Patel. Plaintiff objected to Tate's testimony on the basis of hearsay because Tate related what Patel had told him regarding the incident. The hearings referee overruled the objection, admitting the testimony "for what its worth."

Besides relating Patel's version of the altercation, Tate testified that plaintiff told him that Patel had not hit him. While Tate told

plaintiff that he could go to the going-away party, Tate did not authorize or condone any use of alcohol at the party and recounted problems with plaintiff's past alcohol use where plaintiff was told that further alcohol use could lead to termination. Tate said that all of the employees were subject to the no-alcohol rule while working on the premises, but it was not against company rules for employees on a lunch break to go to a nearby restaurant and drink, as long as they did not come back to work intoxicated.

Tate also testified that Telemation had also had problems with plaintiff because he occasionally did not get along with other employees; however, there had not been any prior physical altercations. Tate testified that Patel was very frightened by the incident with plaintiff and, over a hearsay objection, read Patel's statement that plaintiff allegedly told Patel: "I should have killed you and you better get out of my face before I tear your head off." When Tate confronted plaintiff about the stun gun, plaintiff admitted having it and flashing it at Patel. Tate said that he had previously inquired about the stun gun but was satisfied when plaintiff admitted owning it. Plaintiff never told his supervisor of the altercation although "its understood that if something like this occurs you're suppose to report it." Tate further testified, over a hearsay objection by plaintiff's counsel, that people attending the going-away party told him that plaintiff was drinking and had become loud and rowdy.

Plaintiff responded at the hearing by saying that he did not grab Patel by the neck, only by the shirt, and this was a reaction to Patel's hitting plaintiff on the finger with the remote control device. Plaintiff denied having the stun gun during the altercation.

The hearings referee decided to affirm the determination of the claims adjudicator. In its finding of fact the referee stated:

> "The claimant was discharged as the result of an altercation with a co-worker. The co-worker had snatched a remote control unit out of the claimant's hand in order to turn off a loud playing television. The claimant grabbed the remote control unit back, and the co-worker slammed the unit on the claimant's finger. The claimant responded with a physical attack upon the co-worker, in which the co-worker's forehead was cut. Two witnesses testified to seeing a wound on the co-worker's forehead after the weekend when the co-worker returned to work. The claimant's denial that he caused a blow to the co-worker's head during the altercation on June 2, 1989 was not credible."

The referee concluded that section 602(A) of the Unemployment Insurance Act was violated and:

"The claimant's response to a dispute with a co-worker over control over a television was out of all proportion to the provocation and beyond the needs of self-defense. The claimant's violent attack upon the co-worker constituted a deliberate and willful violation of a reasonable employer policy which harmed the employing unit. The referee finds that the claimant was discharged for misconduct connected with the work."

The plaintiff requested review of the hearings referee's decision by the Board. The Board affirmed the referee's decision and adopted the referee's findings. The Board's decision was affirmed by the circuit court.

The plaintiff first contends that the Board's decision was based upon inadmissible hearsay evidence. The plaintiff argues that the majority of the evidence relied upon by the Board was in the form of testimony concerning alleged statements by Mr. Patel. The defendant asserts that the findings made by the hearings referee and adopted by the Board were supported by competent evidence.

■ Hearsay evidence, when objected to, is not admissible in administrative proceedings. (*Spaulding v. Howlett* (1978), 59 Ill. App. 3d 249, 375 N.E.2d 437.) Although the improper consideration of hearsay evidence could constitute reversible error, the Board did not rely upon the hearsay evidence.

■ The Board found that plaintiff was discharged as a result of his altercation with Patel. The Board found that the plaintiff's attack on Patel after the latter grabbed the remote control unit was not warranted. The Board found that during this altercation Patel's forehead was cut. These facts were established through plaintiff's own testimony and Ms. Pilger's testimony that she saw the cut on Patel's head. The hearsay evidence objected to included statements made to Tate regarding the fact that plaintiff was intoxicated and Patel's written statement which set forth his version of the attack. Patel's statement set forth evidence which, if accepted by the Board, suggested a much higher degree of culpability than the Board found. At the hearing the hearings referee allowed the hearsay evidence "for what its worth." His findings of fact, which the Board adopted, demonstrate that he did not rely on this evidence in making his decision. We therefore reject plaintiff's assertion that improper evidence was considered.

Under section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(A)), an employee is ineligible for benefits if he has been discharged for "misconduct connected with his work." Plaintiff contends that his actions did not constitute miscon-

duct under this section because, at the hearing, the employer failed to set forth a rule or policy violated by plaintiff, as required by the statute. Also, plaintiff argues, if a policy against assaulting co-workers is assumed or implied, the evidence does not support a violation of this rule and, if a violation did occur, it was not shown to be willful. Finally, plaintiff argues that there was no showing of harm to the employer or to a fellow employee as required by statute.

■■ It is well settled in Illinois that the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (*Pesce v. Board of Review of the Department of Employment Security* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849.) The function of a court of review is limited, therefore, to ascertaining whether the decision of the administrative agency is against the manifest weight of the evidence. (*Ferretti v. Department of Labor* (1987), 115 Ill. 2d 347, 353, 506 N.E.2d 560.) Where it appears that the agency's findings are not supported by substantial evidence, they will be reversed. *Galarza v. Department of Labor* (1987), 167 Ill. App. 3d 163, 168, 520 N.E.2d 672; *Gee v. Board of Review of the Department of Labor* (1985), 136 Ill. App. 3d 889, 895, 483 N.E.2d 1025.

■■ The Unemployment Insurance Act (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*) provides insurance benefits to alleviate the economic hardship occasioned by involuntary unemployment. However, the employee-claimant bears the burden of establishing his entitlement to benefits under the Act. (*Clark v. Board of Review of the Illinois Department of Labor* (1984), 126 Ill. App. 3d 559, 467 N.E.2d 950.) If a person is discharged because of his own misdeeds, the Act does not provide benefits. *Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266.

Prior to January 1, 1988, *Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879, had defined "misconduct" under the Act as:

> " '[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " *Jackson*, 105 Ill. 2d at 511-12, quoting *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640.

The present definition of "misconduct" was added to section

602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(A)), effective January 1, 1988. The Act states:

"For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1989, ch. 48, par. 432(A).

Both parties agree that one of the elements to be proven under the new definition of misconduct is "a reasonable rule or policy." The Board argues, citing *Blake v. Commonwealth, Unemployment Compensation Board of Review* (1981), 56 Pa. Commw. 358, 425 A. 2d 43, that a reasonable rule or policy does not have to be proven by direct evidence but can be found by the court to exist through a commonsense realization that some behavior intentionally and substantially disregarded an employer's interest. The plaintiff argues that a reasonable rule or policy must be proven by direct evidence and no evidence was introduced that Telemation did not allow physical altercations between co-workers during working hours. Although no one specifically testified that fighting on the job was not allowed, we believe plaintiff's argument is belied by commonsense business practices. With the exception of some business ventures engaged in professional sports, any employer would obviously have a policy against physical violence between co-employees during working hours on the premises. Also, the fact that plaintiff's inability to get along with others was discussed with him as a problem, and the fact that employees were supposed to inform their supervisor of any incident like the instant one would suggest a policy against altercations between employees.

We also find that the rule or policy against fighting on the job was violated and plaintiff's conduct was wilful. Although legitimate actions taken in self-defense are not misconduct (*Rias v. Department of Employment Security* (1989), 187 Ill. App. 3d 328, 543 N.E.2d 211), the Board found that plaintiff acted beyond the boundaries of self-defense. We see no reason to disturb this finding.

Finally, we find that the plaintiff's conduct caused harm to "the employing unit or other employees." (Ill. Rev. Stat. 1989, ch. 48, par. 432(A).) An employee's wilful action which merely threatened the safety of other workers has been held to constitute misconduct. (See *Granite City Steel Division of National Steel Corp. v. Board of Re-*

*view of the Department of Labor* (1979), 68 Ill. App. 3d 264, 385 N.E.2d 931.) In this case a fellow employee suffered actual injury at the hands of plaintiff. This satisfies the statutory requirement of harm to the employing unit or other employees.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.