DONALD C. HOFFMANN, SR., Plaintiff-Appellee, v. LYON METAL PRODUCTS, INC., Defendant-Appellant (Department of Employment Security, Board of Review, *et al.*, Defendants).

Second District   No. 2—90—1177

Opinion filed August 13, 1991.

GEIGER, J., dissenting.

Katherine M. Moran, of Drendel, Schanlaber, Horwitz & Tatnall, of Geneva, and Bradford L. Livingston, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

J. Timothy Loats, of Law Offices of J. Timothy Loats, and Lisa M. Nyuli, of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., both of Aurora, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Lyon Metal Products, Inc., appeals from the judgment of the circuit court of Kane County which reversed the decision of the Board of Review, Department of Labor (the Board), which found plaintiff, Donald C. Hoffmann, Sr., ineligible for unemployment insurance benefits. The sole issue raised by defendant on appeal is whether the trial court erred in reversing the Board's decision.

Plaintiff was discharged from his position as a material handler for defendant on February 8, 1988, and applied for unemployment insurance benefits. The claims adjudicator determined that plaintiff was ineligible for benefits, finding that plaintiff attempted to remove company property without written authorization. The claims adjudicator noted that this constituted a violation of a known and reasonable company rule and concluded that plaintiff was discharged for misconduct connected with the work and was therefore ineligible pursuant to section 602(A) of "An Act in relation to a system of unemployment insurance" (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 432(A)). Plaintiff's request for reconsideration of this decision was denied. He then requested a hearing before a referee.

At the hearing, the referee reviewed plaintiff's statement to the claims adjudicator. The adjudicator wrote that plaintiff had been employed by defendant since January 1966. Plaintiff noted that this was a period of 22 years. The statement also stated that, on February 6,

1988, a Saturday, plaintiff put an extension cord in a paper sack. He was going to borrow the cord over the weekend. This was not an unusual practice. He was stopped by someone from personnel who asked what was in the sack. Plaintiff showed him and was told to put it back as plaintiff did not have written permission. Plaintiff put it back. When plaintiff reported for work on Monday, February 8, 1988, he was told that his intent was to steal the cord, and he was released.

Plaintiff testified at the hearing that, when he was stopped on February 6, he was asked if he had a "scrap pass" for the cord, and he explained that it was not scrap, that he was just borrowing it for the weekend. He testified that he was not intending to steal anything. He also stated that he had previously obtained passes to take home scrap materials that he was keeping to use around the garage. He had not obtained a pass to borrow items. He had previously borrowed a wheel puller and rethreaders which he brought back the following work day. He had never borrowed anything without returning it. Plaintiff testified that he was not aware that there had ever been a pass system for borrowing anything. Plaintiff stated that he needed the cord to work in his garage and that he did not think that there was any harm in borrowing the extension cord because he was bringing it back on Monday.

Plaintiff also testified that he had never been warned prior to this incident not to take things home and bring them back. He stated that supervisors at the company may have been aware that he had previously borrowed items because "[t]here is [sic] a lot of people borrowing an awful lot down there."

During cross-examination, a paragraph from page 27 of defendant's employee handbook, entitled "Your Job at Lyon," was read into the record. It stated:

"Package Passes

In order to protect company property and avoid embarrassment for the employee, no employee may carry any package out of the plant, except his lunch box or work clothes, without a properly signed package pass. Your supervisor will explain the procedure for obtaining this pass."

Plaintiff's attorney stipulated that plaintiff received the handbook and was aware of the rules. Plaintiff stated that he guessed that he would assume that the language of the rule applied to something that was company property which he intended to borrow. He admitted that he did not notify a supervisor that he intended to borrow the extension cord. He also stated, however, that when he was confronted

on the date of his discharge, he did not believe that he had to have a pass to take the extension cord home.

Plaintiff's wife testified that she regularly picked plaintiff up from work and picked him up on February 6, 1988. She went to a parking lot on the south side of the building. She waited for plaintiff approximately 10 or 12 minutes. She usually picked him up at a different location, but he had called and asked her to pick him up there. She had picked him up there before.

Plaintiff then stated that he asked his wife to pick him up at that location because that was where the other employees working on Saturday were parked and he generally walked out "with the guys." Plaintiff stated that there was no guard stationed at that door and that there was a guard stationed at the door he normally used. Plaintiff also stated that, on previous occasions when he had borrowed company property, he walked past the guard and was not stopped when he left with the property. He had previously taken an extension cord in a sack past the guard.

Donald Mullner, manager of plant engineering and maintenance, testified that it was his understanding through a tip from Dennis Hess, plant manager, that plaintiff was going to remove some unauthorized materials. Hess stated that the tip came from one of plaintiff's co-workers. The co-worker was not identified. Mullner and Bill Kozlowski, project engineer, approached plaintiff as he walked to his car. Plaintiff's wife was in the car, and the car was running. Mullner asked plaintiff what he had in the bag, and plaintiff told him that it was an extension cord. Mullner asked plaintiff if he had a scrap pass for it, and plaintiff said "no."

Mullner further testified:

> "He said it wasn't scrap [sic] he was borrowing it for the week-end, and would bring it back on Monday. I told him he needed a scrap pass for anything he borrowed.
>
> He said he wasn't aware of that. I asked him to see the extension cord. He showed it to me. Said he was going to use it in his garage. I told him that he should use a scrap pass to borrow company material."

Mullner then stated that plaintiff returned the cord and he informed plaintiff that he would report this to the plant manager.

Donald Anderson, the vice-president in charge of human relations for defendant, testified that plaintiff was discharged for "[i]mproper disobedience of company rules, and not obtaining a package pass. Which has to be interpreted as intending to steal." Anderson testified that the package pass policy was intended to protect company prop-

erty. He stated that, as far as he knew, the only exceptions to the policy were lunch boxes or work clothes. He testified that a package pass was the same thing as a scrap pass.

Hess testified that there was no company rule or policy which would prevent an employee from borrowing an item of property "as long as he obtains a package pass to remove it from the company." He testified that the package pass policy applied to borrowed items. He stated that they needed to know where all of their equipment was at all times. Hess and Richard Van Wagoner, second shift superintendent, testified that they had approved package passes for borrowed material quite a few times. To the best of Van Wagoner's recollection, plaintiff had never requested a package pass from him for borrowed materials. Hess stated that plaintiff had come to him to obtain package passes for scrap material.

Hess testified that he had a meeting with plaintiff after the incident, and plaintiff acknowledged that he was aware of the package pass procedure. Plaintiff indicated that he had used the procedure in the past, but had not used it for materials he was borrowing. Plaintiff had used the procedure that Saturday for another employee. Terry Vance, assistant area supervisor, testified that plaintiff had requested a pass for another employee on that day, which Vance denied. The other employee wanted to keep the property requested.

Plaintiff's supervisor did not testify, and there was no testimony that plaintiff had been informed by any of defendant's witnesses that a package pass was necessary for borrowed materials. During closing argument, Anderson argued:

> "Here we have an individual who as far as we were concerned, was trying to circumvent the rules with respect to package passes, which could also lead to theft of property.
>
> And we have had a lot of that around the plant, and we are trying to stop it."

The referee issued his decision on May 16, 1988. He determined that there "was no showing of a deliberate and willful repeated violation in spite of a warning or explicit instruction." He also noted that the "rule is not unambiguous and appears to have been ignored in practice" and concluded that plaintiff was not discharged for misconduct connected with the work.

Defendant appealed this decision to the Board. The Board issued its decision on August 19, 1988. After plaintiff was given notice of the appeal and filed written argument with the Board, an essentially identical reconsidered decision was issued on March 15, 1990, in which the Board reversed the decision of the referee. The Board

noted that the extension cord was concealed in a bag, that plaintiff left through a different door and walked right to his car where his wife was waiting with the motor running and that "[o]ne half [*sic*] hour before quitting time the claimant requested a package pass for a co-worker but did not request one for himself." The Board found:

"At the very least, the claimant was borrowing the extension cord without the employer's permission. His actions were intentionally injurious to the employer's interests, since the employer had an interests [*sic*] in knowing where its property is. The employer was not obligated to wait until the claimant left its property before reclaiming its extension cord."

Plaintiff filed a complaint for administrative review. The circuit court reversed the Board's decision, and this appeal followed.

Defendant argues on appeal that the circuit court committed reversible error in reversing the decision of the Board because: (1) it improperly applied section 602(B) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(B)) in reaching its decision; (2) it exceeded its scope of review under section 3—110 of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—110); and (3) it improperly found that the Board's decision was against the manifest weight of the evidence.

■ Section 602(A) of the Act provides:

"An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work ***. *** For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1989, ch. 48, par. 432(A).

The amendment to this section which added the definition of misconduct was effective January 1, 1988, and is therefore applicable to this case. Thus, plaintiff is ineligible for benefits if: (1) he deliberately and willfully violated a reasonable rule or policy of the employer related to his behavior in the performance of his work; *and* (2) the violation either harmed defendant or other employees *or* was repeated by plaintiff despite a warning or other explicit instruction from defendant. (Ill. Rev. Stat. 1989, ch. 48, par. 432(A).) Under the statute, deliberate and willful misconduct is required in order to render a person ineligible for benefits. *Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 975.

In this case, Hess, defendant's plant manager, acknowledged that defendant does not have a policy against borrowing by employees. Defendant's witnesses did not testify that plaintiff was given a warning or explicit instruction regarding the necessity of obtaining a package pass prior to borrowing items. Therefore, in order to find that plaintiff was discharged for misconduct based on the applicable definition, the evidence must support the conclusion that plaintiff deliberately and willfully violated defendant's package pass policy and thereby harmed defendant or other employees. We do not believe that the evidence presented to the referee supports this conclusion and therefore affirm the trial court.

It is well settled that the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 510; *Meeks v. Department of Employment Security* (1990), 208 Ill. App. 3d 579, 584; Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) A reviewing court's function is limited, therefore, to ascertaining whether the decision of the administrative agency is against the manifest weight of the evidence (*Jackson*, 105 Ill. 2d at 513; *Meeks*, 208 Ill. App. 3d at 584), that is, whether the opposite conclusion is clearly evident (*Crowley v. Department of Employment Security Board of Review* (1989), 190 Ill. App. 3d 900, 904). It is the decision of the Board, not the referee, which is reviewed by the court. *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723; *Carroll v. Board of Review, Illinois Department of Labor* (1985), 132 Ill. App. 3d 686, 690-91.

A reviewing court is not bound to give the same deference to an agency's conclusions of law, such as its construction of a statute, as it gives to its findings of fact. (*Adams*, 206 Ill. App. 3d at 723; see also *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 516.) Also, where it appears that the agency's findings are not supported by substantial evidence, they will be reversed. (*Meeks*, 208 Ill. App. 3d at 584; *Placko v. Jackson* (1990), 197 Ill. App. 3d 138, 146-47; *Rias v. Department of Employment Security* (1989), 187 Ill. App. 3d 328, 330.) When an administrative order is contrary to the manifest weight of the evidence, it is the appellate court's duty to affirm the circuit court's action in setting the order aside. *Gee v. Board of Review of the Department of Labor* (1985), 136 Ill. App. 3d 889, 895; *Sheff v. Board of Review, Illinois Department of Labor* (1984), 128 Ill. App. 3d 347, 350.

"Every discharge even if justifiable does not disqualify the former employee from receiving unemployment benefits. An employee's conduct may be such that the employer may properly discharge

him. Such conduct may not, however, constitute misconduct connected with work." (*Adams*, 206 Ill. App. 3d at 726, citing *Jackson*, 105 Ill. 2d at 512.) While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Adams*, 206 Ill. App. 3d at 723; *Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 577-78.

■ The evidence presented to the referee does not support a conclusion that plaintiff's violation of defendant's package pass policy was deliberate and willful. The witnesses presented by defendant testified that, after the incident leading to his discharge, plaintiff consistently stated that he was not aware that a scrap pass was needed for borrowed items and that he had used the pass procedure for items he was keeping, but not for borrowed items. Plaintiff stated the same thing to the claims adjudicator and at the hearing before the referee. This is also consistent with the testimony of Hess and Van Wagoner that plaintiff had requested passes for scrap items he intended to keep but had not requested passes for borrowed items. Vance testified that the pass plaintiff requested for a co-worker was for an item the co-worker intended to keep. Plaintiff testified that he had borrowed items before and had returned them the next work day and that he did not think that there was any harm in borrowing the extension cord because he was bringing it back on Monday.

It is true that the rule contained in defendant's employee handbook appears to apply to *any* package, including borrowed items. Plaintiff's attorney stipulated that plaintiff was aware of the rules contained in the handbook, and plaintiff testified that he "guessed" that the language in the package pass policy applied to borrowed items. Plaintiff consistently stated, however, that this was not his understanding. There was no testimony that plaintiff had been otherwise informed. Plaintiff's understanding of the package pass policy was also bolstered by the fact that a package pass was referred to as a "scrap pass" by Mullner. Anderson acknowledged that a package pass was the same thing as a scrap pass. Further, plaintiff told the claims adjudicator that borrowing items was not an unusual practice and testified that a lot of people borrowed "an awful lot" at the plant. Anderson, defendant's vice-president in charge of human relations, acknowledged in his argument before the referee that they had had a lot of "circumvent[ing] the rules with respect to package passes" and were trying to stop it.

The Board attached great importance, in reaching its conclusion that plaintiff's actions were "intentionally injurious," to the facts that

plaintiff had the cord in a paper bag and used an exit where no guard was posted and to the fact that plaintiff's wife was waiting with the car running. It also noted that plaintiff had requested a pass for a co-worker the same day. We cannot agree that these facts indicate that plaintiff was purposefully sneaking an extension cord out of the plant, deliberately violating the package pass policy. Plaintiff testified that he had taken borrowed items past the guard at the other exit on prior occasions and was not stopped. He also gave a reasonable explanation for his use of an alternative exit on that day. Plaintiff's wife testified that she regularly picked plaintiff up from work, sometimes at the same location used that day. The fact that the car was running, in February, cannot have great significance. Also, the fact that plaintiff had requested a pass for a co-worker that day for an item the co-worker intended to keep is consistent with plaintiff's explanation of his understanding of the pass policy.

■ We also find totally irrelevant the Board's conclusion that defendant "was not obligated to wait until the claimant left its property before reclaiming its extension cord." Plaintiff never denied that he intended to leave with the cord and borrow it for the weekend. Based on the statutory language, the issue is whether plaintiff deliberately and willfully violated the rule requiring that he obtain a package pass, or scrap pass, before taking the cord. We conclude that the facts are insufficient to establish a deliberate and willful violation on the part of plaintiff. See *Siler*, 192 Ill. App. 3d at 975.

■ We additionally note that the facts here do not support a finding that the second prong of the statutory test was met. As the extension cord was returned, there was no evidence that defendant was harmed by the violation of the rule. (See, *e.g., Adams v. Ward* (1990), 206 Ill. App. 3d 719, 728-29 (no harm to employer because uniforms employee discarded in trash were retrieved).) While we recognize that other courts have held that the threat of future financial loss caused by the conduct of an employee is harmful to an employer (see *Bandemer v. Department of Employment Security* (1990), 204 Ill. App. 3d 192, 195; *Winklmeier v. Board of Review of the Department of Labor* (1983), 115 Ill. App. 3d 154, 156), there was no testimony that defendant had suffered or would suffer any loss of property or other harm due to plaintiff's violation of the package pass policy. The testimony by defendant's witnesses that the company needed to know where its equipment was at all times and that the purpose of the pass policy was to protect company property was sufficient to establish that the policy was reasonable. Under these circumstances, however, this testi-

mony was not sufficient to establish that defendant was harmed by plaintiff's violation of the policy.

■ We therefore cannot agree with defendant that there is "overwhelming" evidence in the record to support the Board's decision. Defendant also contends that the trial court exceeded its scope of review by failing to accept the Board's factual findings and by assessing the credibility of the witnesses. We note that, as a practical matter, in order to perform its reviewing function, the court must consider and weigh the evidence to determine if the agency's decision is against the manifest weight of the evidence. (See *Sheff v. Board of Review, Illinois Department of Labor* (1984), 128 Ill. App. 3d 347, 350.) Defendant further argues that the trial court committed reversible error in applying section 602(B) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(B)) in reaching its decision. We agree that section 602(B) was not at issue in these proceedings. Even assuming, however, that the trial court exceeded the scope of its review by assessing the credibility of the witnesses and erred in referring to section 602(B) as another justification for its holding, we may agree with the result reached by the trial court for different reasons as long as they are supported by the record. See *London v. Department of Employment Security* (1988), 177 Ill. App. 3d 276, 278-79, citing *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286.

Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD, J., concurs.

JUSTICE GEIGER, dissenting:

In the pertinent part of section 602(A) of the Unemployment Compensation Act, "misconduct" is defined as "the deliberate and willful violation of a reasonable [work-related] rule or policy of the [employer] *** provided such violation has harmed the [employer]." (Ill. Rev. Stat. 1989, ch. 48, par. 432(A).) An employee who is discharged for "misconduct" is at least partially disqualified from receiving unemployment compensation benefits. Ill. Rev. Stat. 1989, ch. 48, par. 432(A).

This case rests partially upon an evaluation of whether the record includes evidence to support the Board's factual determination that the plaintiff "willfully" violated the employer's package pass policy. It also rests partially upon a statutory construction of what constitutes

"harm" to an employer. The basic question before us is whether there was justification for the circuit court to disturb the Board's conclusion that the plaintiff was discharged for misconduct so that he was not entitled to unemployment compensation benefits.

As to whether the plaintiff's violation of the package pass policy was willful, I acknowledge that the evidence before the Board can be construed to support the conclusion reached by the majority. The evidence could be construed to show that the plaintiff did not willfully violate the pass rule. However, while the evidence may not "overwhelmingly" support the plaintiff, we, like the trial court, have only the limited function of assessing whether the Board's decision is against the manifest weight of the evidence. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723.) In my opinion it was not.

There is evidence here that the plaintiff stipulated to being aware of his employer's rule requiring a package pass. There also is evidence that he placed a "borrowed" electrical cord into a paper bag and used an unguarded exit rather than his usual exit when he carried the bag from the employer's facility. Also, there is evidence that only half an hour earlier in the day in question, he demonstrated his knowledge of the package pass requirement when he requested a pass for a co-worker. I find sufficient evidentiary support for the Board's factual determination of willful violation, and, thus, I find no justification to disturb the Board's factual finding.

In the second, statutory construction issue, whether the plaintiff's violation caused the employer "harm," I also find no reason to justify disturbing the Board's decision. The first district, sixth division, has suggested that when there was no actual loss, section 602(A) "harm" is not shown by evidence of threatened future financial loss to the employer caused by a plaintiff's willful misconduct. There, the court found that the record supported the trial court's finding that no harm occurred where the employer recovered its property improperly discarded by the employee. (*Adams v. Ward* (1st Dist., 6th Div. 1990), 206 Ill. App. 3d 719, 728-29.) The majority here relies, in part, on that *Adams* suggestion. I would not do so.

Initially, I consider the majority *Adams* analysis to be unpersuasive and of questionable authority. Rather than making its own analysis of the underlying law (see *Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 1024), or focusing on the Board's factual analysis, the *Adams* majority inappropriately relied apparently on the sufficiency of the record to support the *trial court's* finding of no harm. The Board, not the trial court, of course, is the determinative fact finder in this kind of administrative review. See

*Zenith Vending Corp. v. Village of Schaumburg* (1989), 180 Ill. App. 3d 354, 362; *Adams*, 206 Ill. App. 3d at 723.

In addition to questioning the *Adams* majority's reasoning, I also question their conclusion. Other courts have held that the threat of future financial loss caused by the conduct of the employee constitutes "harm" to the employer in the unemployment compensation context. (See *Bandemer v. Department of Employment Security* (1st Dist., 1st Div. 1990), 204 Ill. App. 3d 192, 195.) I subscribe to that view, in agreement with the *Adams* special concurrence.

The apparent view of the *Adams* majority is incompatible with the underlying policy of the Unemployment Insurance Act: to provide benefits to workers whose unemployment is not occasioned by their fault. (*Adams*, 206 Ill. App. 3d at 730 (Rakowski, J., specially concurring).) The *Adams* suggestion upon which the majority here relies would protect a discharged worker from loss of unemployment compensation merely because his employer had responded to the worker's financially threatening conduct and somehow had successfully managed to avoid quantifiable loss.

The record and the law here support the Board's conclusion that the plaintiff was disqualified from unemployment compensation because of his act harming his employer. That conclusion should have been affirmed by the circuit court. I respectfully dissent.