EVE L. KIEFER, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—4450

Opinion filed September 16, 1994.

Ron Fritsch, of Legal Aid Bureau, of Chicago, for appellant.

Alisa B. Arnoff, of Scalambrino & Arnoff, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Eve L. Kiefer, appeals from an order of the circuit court of Cook County, which affirmed the decision of the Board of Review of the Illinois Department of Employment Security (the Board) denying her unemployment benefits under section 602A of the Unemployment Insurance Act (Ill. Rev. Stat. 1991, ch. 48, par. 432) on the ground of misconduct. Plaintiff contends that the finding of misconduct is against the manifest weight of the evidence and contrary to the law.

The relevant facts are as follows. Plaintiff was employed by HealthNetwork, Inc., from July 1990 until April 26, 1991, as a marketing associate and assistant to the company's president, George C. Phillips, Jr. HealthNetwork is a preferred provider organization (PPO) which offers discounts to persons who have purchased health insurance policies from Association Life Insurance Company, provided those persons obtain their healthcare from doctors, dentists and hospitals who are members of HealthNetwork. HealthNetwork is not itself an insurance company.

While working for HealthNetwork, plaintiff also sold health insurance for Association Life. The commissions plaintiff earned for selling the insurance were paid by Association Life to HealthNetwork, which passed them on to plaintiff. Plaintiff was licensed by the State of Illinois to sell health insurance and had been authorized by a HealthNetwork superior to sell Association Life insurance after being hired by HealthNetwork. HealthNetwork paid for plaintiff's insurance license, and when she applied for her broker's license with Association Life, HealthNetwork supplied her with a copy of its own insurance license to use as part of her application. Plaintiff received her license after she became Phillips' special assistant.

According to plaintiff, no one at HealthNetwork, including Phillips, informed her she could not sell insurance while working for the company. Two other employees, Joy Myers and Donna Willard, who also worked in Phillips' office, were aware that she was selling insurance for Association Life.

In connection with her selling insurance for Association Life, plaintiff drafted a form called a "Request for Quote." Plaintiff sent

the form to a group of dentists—collectively referred to as the Center Point IDA—who were members of the HealthNetwork PPO, and who were looking for health insurance for their employees. The heading on the request-for-quote form read:

"CENTER POINT IDA
REQUEST FOR QUOTE
ASSOCIATION LIFE/HEALTHNETWORK HEALTH
INSURANCE."

Plaintiff sent the form to the Center Point dentists so that they could supply her with the census information she needed to quote to the dentists prices on Association Life health insurance policies. She stated that the form was merely for information-gathering purposes, providing her with details about the dentists' employees and the coverage they desired. The form did not purport to be a contract binding HealthNetwork or Association Life in any manner. Upon receipt of the completed forms, plaintiff would follow up with the applicants to verify that the information was correct and to obtain additional information, when necessary. She would then call Association Life for a quote.

At the hearing before the Department of Employment Security referee, conducted after the claims adjudicator denied plaintiff benefits on the ground of misconduct, plaintiff explained that she inserted the HealthNetwork name into the form's heading only for the purpose of indicating to the dentists that she worked for both Association Life and HealthNetwork. Phillips, upon learning that plaintiff had included HealthNetwork's name in the heading, discharged her. Phillips told plaintiff that she was terminated for misrepresenting HealthNetwork's name and potentially obligating it to pay insurance claims. Plaintiff sold no insurance policies as a result of her use of the form.

Phillips testified that the form had not been authorized by anyone at HealthNetwork, despite plaintiff's knowledge of the company's unwritten policy requiring all forms to be approved by the staff committee. Phillips acknowledged that he never spoke with plaintiff specifically about the policy or about her selling insurance. Phillips stated that, in addition to plaintiff being terminated for violating the policy and for subjecting the company to potential contractual liability, she was also terminated for selling insurance while acting as his personal assistant. Phillips did not mention the latter reason to plaintiff when he discharged her. Phillips also testified that there was no indication that plaintiff's use of the HealthNetwork name on her form caused the company any actual harm.

The referee concluded that plaintiff's act of creating and

circulating the request-for-quote form, although possibly negligent, did not constitute a wilful violation of a company policy causing harm to the company. Accordingly, the referee held that plaintiff was entitled to unemployment benefits.

HealthNetwork appealed the referee's finding to the Board, which reversed. The Board found that plaintiff was not authorized to sell insurance while fulfilling her duties as Phillips' assistant and that she distributed the request-for-quote form without HealthNetwork's authorization. The Board held that plaintiff "wilfully and deliberately distributed misleading *** information about her employer, its services and products to third parties to the employer's detriment." The Board concluded that the act complained of constituted "misconduct" under section 602(A), and accordingly found plaintiff ineligible for unemployment benefits. Plaintiff filed a complaint for administrative review of the Board's ruling in the circuit court of Cook County. The trial court affirmed the Board's decision, finding it to be neither against the manifest weight of the evidence nor contrary to law.

A discharged employee is eligible to receive unemployment benefits under the Act provided that the basis for her discharge was not "misconduct" as defined in section 602(A). Plaintiff contends that the Board's decision was against the manifest weight of the evidence since there was no showing that the act complained of amounted to misconduct.

Section 602(A) defines "misconduct" as:

"[T]he deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

"It is well settled that the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct." (*Hoffmann v. Lyon Metal Products, Inc.* (1991), 217 Ill. App. 3d 490, 497, 577 N.E.2d 514, 518.) Accordingly, the reviewing court's function is limited to determining whether the administrative agency's decision is against the manifest weight of the evidence (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879), that is, where the opposite conclusion is clearly evident. (*Richardson Brothers v. Board of Review of the Department of Employment Security* (1990), 198 Ill. App. 3d 422, 555 N.E.2d 1126.) However, "[a] reviewing court is not bound to give the same deference to an agency's conclusions of law, such as its construction of a statute, as it gives to its findings of fact." *Hoffmann*, 217 Ill. App. 3d at 497, 577 N.E.2d at 519.

While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally construed to favor the awarding of benefits. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 565 N.E.2d 53.) As the Act makes clear, three main requirements must be met before an employee may be disqualified from receiving unemployment benefits on the ground of misconduct. First, there must be a violation of a reasonable rule or policy of the employer connected with the employee's work. Second, the violation must be deliberate and wilful. Finally, the violation must have harmed the employer or been repeated by the employee despite a warning or other explicit instruction from the employer. Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

In the present case, we believe that we need not consider the first two requirements. On the record before us, we find that the conduct complained of was not an action that was repeated despite a prior warning by HealthNetwork; it was clearly a one-time occurrence. We further find that HealthNetwork was not harmed by plaintiff's conduct.

Phillips testified that, as of the date of the hearing, the company had suffered no financial liability or other type of harm as a result of plaintiff's use of the HealthNetwork name on the form. HealthNetwork argues, however, that plaintiff's conduct potentially obligated it to pay insurance claims submitted by the dentists' employees and that this threat of future financial loss caused it harm. We reject this contention because the evidence reveals that plaintiff sold no insurance policies through the use of the form. Accordingly, no basis exists on which to support HealthNetwork's claimed concern for future contractual liability. HealthNetwork also argues that plaintiff's use of the company's name on the form potentially subjected it to monetary sanctions for violating State insurance laws precluding PPOs from accepting and underwriting risks for providing health insurance. It also argues that plaintiff's use of its name could potentially damage its reputation after customers who were misled by plaintiff's misrepresentation learned that HealthNetwork was not an insurance provider.

There is a division of authority as to whether the threat of future harm is sufficient to prove "harm" to the employer under section 602(A). Several recent appellate decisions have construed the Act to require a showing of *actual* harm.

In *Zuaznabar v. Board of Review of the Department of Employment Security* (1993), 257 Ill. App. 3d 354, 628 N.E.2d 986, the court held that the employee was not disqualified from receiving benefits under section 602(A), in part because the employer failed to prove

that it suffered *actual* harm from the plaintiff's conduct. The court held that "[a] mere potential for injury is not enough to establish the third element for a finding of statutory misconduct." *Zuaznabar*, 257 Ill. App. 3d at 357, 628 N.E.2d at 989.

In *Hoffmann*, the employee was discharged for attempting to take home an extension cord belonging to the employer without a "scrap pass." The employee contended he was merely borrowing the extension cord, but his employer believed he was trying to steal it. In upholding the trial court's award of benefits under section 602(A), the court found that the employer was not actually harmed by the employee's conduct because the extension cord had been returned. The court went on to find that there was no evidence that the employer suffered or would suffer any loss of property or other harm as a result of the employee's conduct. *Hoffmann*, 217 Ill. App. 3d at 499, 577 N.E.2d at 520; see also *Adams v. Ward*, 206 Ill. App. 3d 719, 565 N.E.2d 53.

In the present case, we do not believe the threats of possible future injury advanced by HealthNetwork constitute "harm" under the Act. It has offered no evidence to show that either the threat of monetary sanctions for allegedly violating State law or the loss of goodwill occasioned by plaintiff's one-time use of its name on the request-for-quote form are likely to ever evolve into actual threats. On the record before us, we conclude that the risk of loss to Health-Network, financial or otherwise, is nothing more than a remote possibility. The form was, as plaintiff testified, merely an information-gathering tool. It was not an offer or agreement to provide insurance or to do anything else, and it did not purport to contractually bind HealthNetwork, or Association Life for that matter, in any manner. Moreover, as stated, no policies were purchased by the several dentists to whom the form was sent, thus negating HealthNetwork's claim that customers who purchased policies would look poorly upon the company after learning it was not an insurer. While we recognize that a few courts have held that a threat of future financial loss occasioned by the conduct of the employee has been held to be harmful to an employer (see *Bandemer v. Department of Employment Security* (1990), 204 Ill. App. 3d 192, 562 N.E.2d 6; *Winklmeier v. Board of Review of the Department of Labor* (1983), 115 Ill. App. 3d 154, 450 N.E.2d 353), the threats at issue in those cases were real and impending, not remote and speculative possibilities. Accordingly, we find those cases to be distinguishable. Other reviewing courts are in accord with this analysis. See *Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 576 N.E.2d 532; *Pesce v. Board of Review of the Department of Employment Security* (1987), 161 Ill. App. 3d 879, 515 N.E.2d 849.

For the reasons stated, we hold that plaintiff is entitled to unemployment benefits under the Act. The judgment of the circuit court of Cook County is therefore reversed.

Judgment reversed.

EGAN, P.J., and RAKOWSKI, J., concur.