BRENDA J. DeBOIS, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—93—1253

Opinion filed August 3, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-
licitor General, and Jessie A. Wang-Grimm, Assistant Attorney General, of
counsel), for appellants Department of Employment Security, Director of
Department of Employment Security, and Board of Review.

Dwight W. Levert, of Cook County Legal Assistance, of Harvey, for ap-
pellee.

JUSTICE THEIS delivered the opinion of the court:

Brenda DeBois (claimant) was discharged after her employer
discovered that she left work more than an hour early on several oc-
casions without the approval of her supervisor and falsified her time
sheets. She applied for unemployment benefits with the Illinois
Department of Employment Security (Department). The Board of
Review found that the claimant should be denied unemployment
benefits. After hearing arguments, the circuit court reversed the
Board of Review's finding. The Department, the Director of the
Department, the Board of Review and Illinois Bell Telephone
Company appeal this decision. We now reverse the decision of the
circuit court.

The claimant began working at Illinois Bell on July 3, 1968. In
1991, she was employed there as a computer attendant, working out
of the office located at 225 West Randolph.

From February 25, 1991, to June 17, 1991, the claimant was on
disability leave. When the claimant returned to work in June, she
was assigned to work the evening shift and her hours of work were 4
p.m. until 12 midnight. Employees assigned to the evening shift were
allowed to take a 30-minute unpaid lunch break and two 15-minute
paid breaks. They were therefore paid for $7^{1}/_{2}$ hours of work, al-
though they were only required to work for seven hours.

The times for lunches and breaks were prescheduled and communicated to the employees. Any changes in the times that were scheduled had to be approved by a supervisor. One of the supervisors testified that employees would ask if they could combine their lunch and break times so that they could work through them and leave one hour early but the supervisors generally did not allow them to do so. The claimant testified that she was sometimes allowed to combine her lunches and breaks and leave early when there was a holiday and no shift was scheduled to begin work after her shift left.

In March of 1991, Illinois Bell discontinued the practice of having an on-site supervisor present at 225 West Randolph. Instead, a supervisor from the Marquette Park office was assigned to the employees at the downtown location. This supervisor would speak with the employees by telephone and periodically visit the office. Illinois Bell also appointed one on-site employee to act as the "lead person," which was a position like a temporary supervisor. The claimant sometimes acted as the lead person on her shift.

In June of 1991, the management at Illinois Bell became aware that employees were not staying until the end of their shift on Friday evenings. On August 9, 1991, Ron Elenbaas, the district manager, began stationing himself at the only exit door so that he could observe at what time the evening shift employees left work on Friday evenings. On that evening, he began observing the exit door at 10:30. He saw no employees leave. At 11:25, he went up to the computer room and found it locked. He concluded that all the employees had left before he had begun his observation.

He continued his observation for seven weeks. Although the claimant was scheduled to work until 12 midnight, she was seen leaving work at 10:55 p.m. on August 16, 1991. The claimant left at 11 p.m. on August 23. On August 30, Elenbaas again saw her leave early, although he did not specify at what time, and on September 6, he saw her leave at 10:30. On September 13, Elenbaas began observing the exit at 10:45 and never saw her leave; on September 20, he began observing the exit at 10:15 but never saw her leave. On both days, after waiting, he went up to the computer room and found it already locked. He therefore concluded that the claimant had left at some point before he started his observation.

Like other employees at Illinois Bell, the claimant was responsible for completing her own time sheet and recording the times at which she took lunches and breaks and departed. The claimant's time sheets for this period reflected that she had worked from 4 p.m. until 12 midnight.

Consequently, the claimant was suspended on September 26,

1991, and dismissed on October 6, 1991, because she falsified her time sheets, thereby violating Illinois Bell's code of conduct.

The claimant then applied for unemployment benefits and Illinois Bell contested the payments. She contended that she combined her lunch and break times, "lumping" them together at the end of her shift, and shut down the computer room early in order to help her employer. The claims adjudicator found the claimant eligible for benefits. Illinois Bell appealed the decision.

The referee reversed the claims adjudicator's decision. The claimant appealed to the Board of Review of the Department. The Board of Review (the Board) affirmed the referee's denial of benefits. The Board's decision stated:

"[The claimant's] action in routinely leaving work an hour or more early on several Fridays without prior permission and without deducting the time off from hours paid was a wilful [sic] violation of the employer's work rules and the employee's code of ethics. The employer was harmed by closure of the computer center early and by paying the claimant and her co-workers for time not actually on duty."

The claimant then appealed to the circuit court. After hearing arguments, the court reversed the Board's decision, finding that Illinois Bell's failure to adhere to its stated policy of providing discipline of an escalating nature overshadowed the claimant's misconduct. The circuit court therefore allowed the claimant to receive unemployment benefits. This decision was appealed.

Our consideration of the merits of this case requires that we first determine the proper standard that is to be applied in unemployment insurance matters. In reviewing the Board of Review's decision, the circuit court first noted that there is no question that, "[i]n the normal case," the claimant's conduct would be considered misconduct which would deprive her of unemployment benefits.

However, the court considered the "preeminent question" to be the effect that should be given Illinois Bell's failure to follow a progressive disciplinary policy. Applying cases involving the issue of wrongful discharge, such as *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the circuit court first noted that Illinois Bell had established a progressive disciplinary policy. The court also recognized that there was "no dispute" that Illinois Bell had failed to follow this policy with respect to discharging the claimant. The court concluded that progressive discipline policies play an important role in the modern work place and, because Illinois Bell violated its progressive disciplinary policy, it cannot now complain that the claimant should be denied benefits.

■ We disagree with the analysis employed by the circuit court. On this appeal, we are not considering a wrongful discharge action filed by DeBois against this employer. Rather, at issue before us is a matter of the denial of unemployment benefits. Such matters are governed by the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 300 *et seq.*).

The grounds for disqualification of eligibility for unemployment insurance benefits are "provided in Sections 601 through 614, inclusive," of the Act. (See Ill. Rev. Stat. 1991, ch. 48, par. 430.) In none of these sections are unemployment benefits contingent upon an employer's compliance with its progressive disciplinary policies. These sections do make clear, however, that an employee is denied benefits when he or she engages in misconduct. Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

The Unemployment Insurance Act defines misconduct as follows:
"For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

When the statute defines its own words, courts interpreting that statute should construe those words in accordance with the statutory definition. (*Puss N Boots, Inc. v. Mayor's License Comm'n* (1992), 232 Ill. App. 3d 984, 987, 597 N.E.2d 650, 653.) Here, misconduct is defined to occur when (1) a claimant violates a reasonable rule of the employer (2) through willful conduct and (3) either causes harm to the employer or other employees or repeats the action despite an explicit warning to avoid that action. (*Kiefer v. Department of Employment Security* (1994), 266 Ill. App. 3d 1057, 1061, 640 N.E.2d 1252, 1255; see also *Zuaznabar v. Board of Review of the Department of Employment Security* (1993), 257 Ill. App. 3d 354, 356, 628 N.E.2d 986, 988.) This definition makes no mention of excusing misconduct where an employer violates a policy of providing escalating discipline. We therefore cannot conclude that the legislature intended the result reached by the circuit court.

Having found that the decision of the circuit court was contrary to law, we now must consider the decision of the Board of Review and determine whether it is against the manifest weight of the evidence. The function of a reviewing court is to determine whether the administrative agency's decision is against the manifest weight of the evidence. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723, 565 N.E.2d

53, 56.) For a finding to be considered against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Kelley v. Department of Labor* (1987), 160 Ill. App. 3d 958, 962, 513 N.E.2d 988, 989.) Upon reviewing the record in this matter, we cannot conclude that the decision of the Board of Review is against the manifest weight of the evidence.

We first consider whether Illinois Bell had established a reasonable rule regarding falsifying time sheets. Illinois Bell's code of conduct states, in part:

> "Making a false or misleading report or record of measurement data is as serious as falsifying vouchers, financial data, or records pertaining to company funds or property. There is no excuse for a deliberately false or misleading report or record."

■ There is also evidence that a memo had been circulated among the members of the evening shift discussing Illinois Bell's policy regarding accurate completion of time sheets. This memo stated that it was imperative that employees holding positions such as the claimant's fill out time sheets correctly and the failure to do this would result in disciplinary action. Although the claimant did not receive this memo at the time that it was issued, when she returned from disability leave her supervisor informed her of the policy. We therefore find that the Board could conclude that Illinois Bell had established a reasonable rule directing employees to avoid falsifying company time sheets.

The second prong of the test for misconduct is whether the claimant willfully violated the rule. There was testimony indicating that the claimant had been notified on several occasions by her supervisor that time sheets must be completed accurately. Nonetheless, the claimant left work more than an hour early on several Friday evenings and indicated that she had not left until 12 midnight. Plaintiff therefore falsified the company record and violated the rule by indicating that she did work the full time that was recorded on her time sheet. She then signed each of her time sheets after the statement "The time recorded by me above is correct." Willful behavior is found when an employee is aware of a company rule but disregards the rule. (See *Washington v. Board of Review* (1991), 211 Ill. App. 3d 663, 668, 570 N.E.2d 566, 570.) Based on the facts contained in the record, the Board could conclude that the claimant's act of disregarding Illinois Bell's rule was willful.

Third, there must be some showing that the claimant's disregard of the rules caused the employer harm. The claimant indicated on her time sheets that she had worked the full seven hours that were required of someone assigned to her shift. However, there was

testimony that she worked less than the full amount of hours on several occasions. Through her action of falsifying the time sheets, Brenda DeBois claimed that she was entitled to more money than she was actually owed. The Board could conclude that the claimant's actions resulted in harm to her employer.

Therefore, there is sufficient evidence in the record to support the Board's conclusion that this claimant had been notified of a reasonable rule of the employer, had willfully violated that rule and, in doing so, caused harm to the employer. No opposite conclusion is clearly evident. We affirm the decision of the Board.

Circuit court reversed; Board of Review affirmed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.