No. 2--95--0698

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE       )  Appeal from the Circuit Court

OF ILLINOIS,                  )  of Stephenson County.

                              )

     Plaintiff-Appellant,     )  No. 93--CF--422

                              )

v.                            )

                              )

JOHN A. GOEBEL,               )  Honorable

                              )  Richard E. DeMoss,

     Defendant-Appellee.      )  Judge, Presiding.

_________________________________________________________________

     JUSTICE HUTCHINSON delivered the opinion of the court:

     The State appeals from the order of the circuit court of

Stephenson County granting the motion of the defendant, John A.

Goebel, to dismiss an amended information filed against him on

January 9, 1995.  The State's motion to reconsider was denied, and

this timely appeal was filed.  We reverse and remand.  

     The State petitioned this court for leave to supply us with

additional authority; we granted the State's petition.  On appeal

to this court, the State raises one issue:  whether reversal of the

trial court's dismissal order is required, based on the authority

of People v. DiLorenzo, 169 Ill. 2d 318 (1996).  The State contends

that the allegations in the amended information were sufficient to

state the offense of aggravated criminal sexual abuse.  We agree

with the State. 

     Defendant was charged by information with the offense of

criminal sexual assault.  The information was later amended to

charge defendant with committing the offense of aggravated criminal

sexual abuse.  The amended information alleged:

          "[Defendant], on or about the 10th day of November 1992

     at and within Stephenson County, Illinois did commit the

     offense of AGGRAVATED CRIMINAL SEXUAL ABUSE in violation of

     Chapter 38, Illinois Revised Statutes *** Section 12--16(b) in

     that said defendant, [a family member] of [D.R.], knowingly

     committed an act of sexual conduct with [D.R.], who was under

     18 years of age when the act was committed, in that said

     defendant rubbed his penis against the buttocks of [D.R.]." 

     (Emphasis in original.)

     Section 12--16(b) of the Criminal Code of 1961 reads in

pertinent part:

          "The accused commits aggravated criminal sexual abuse if

     he or she commits an act of sexual conduct with a victim who

     was under 18 years of age when the act was committed and the

     accused was a family member."  720 ILCS Ann. 5/12--16(b)

     (Smith-Hurd Supp. 1996).  

     The Criminal Code of 1961 defines "sexual conduct" in

pertinent part as "any intentional or knowing touching or fondling

by *** the accused *** of the sex organs *** of the victim *** for

the purpose of sexual gratification or arousal of the victim or the

accused."  720 ILCS Ann. 5/12--12(e) (Smith-Hurd Supp. 1996).

     Defendant was tried before a jury on January 10-12, 1995.  The

State's first witness was the victim, D.R.  D.R. testified to the

events occurring on or about November 8 and 9, 1992, in which she,

defendant, and her sister, Tonya, were at the residence of

defendant and his wife, Darcy.  D.R. testified that the three of

them, D.R., Tonya, and defendant, were painting the kitchen, and,

by the end of the evening, D.R. had paint in her hair and clothes. 

She testified that she went upstairs to take a bath, but, because

the paint was still in her hair, she called to her sister for

assistance.  Defendant, instead, went upstairs into the bathroom

and suggested she go to the basement and shower the paint out of

her hair.  D.R. testified that, upon exiting from the shower in the

basement, defendant had come down the stairs, led her towards a

workout bench, and, with her back facing him, exposed his penis to

her.  He then "started rubbing his penis up and down on [her]

butt."  D.R. also testified that defendant told her that she was

too beautiful for her own good.  

     D.R. testified that another incident occurred at defendant's

residence after a funeral sometime at the end of June 1992.   She

testified that she and defendant went downstairs to talk, but that

defendant started rubbing her back and put his hand down her pants. 

She testified that defendant took off D.R.'s pants, kissed her

breasts, put his finger in her vagina, and then put his mouth on

her vagina.  Defendant then exposed his penis to her, ejaculated,

and instructed D.R. to taste the semen.  

     According to D.R.'s testimony, another incident took place at

defendant's residence around October 1992.  D.R. testified that she

and defendant were in the living room and she had been getting him

beers from the refrigerator when he told her to go upstairs "so

Darcy won't get suspicious."  She testified that they went upstairs

and defendant turned on the television.  Defendant then proceeded

to pull down D.R.'s pants, kiss her breasts and vagina, and put his

finger in her vagina.  

     D.R. next testified to an incident occurring in mid to late

June 1993 at defendant's newly purchased residence.  D.R., among

others, was helping defendant renovate the residence prior to

defendant and his family moving in.  D.R. testified that, on this

occasion, she had just finished going to the bathroom, but, before

she could pull up her underwear and pants, defendant came in and

put his fingers on her vagina and talked about his sex drive.  D.R.

testified that defendant then stopped, apologized, and said he

could not help himself.  She testified they then took a tour of the

house, and, while they were upstairs, defendant laid D.R. down,

took her pants down, and lifted her shirt and bra, exposing her

breasts.  D.R. testified that defendant then put his fingers in her

vagina, kissed her breasts and vagina, and then attempted, but

failed, to put his penis in her vagina.  Defendant then instructed

her to put her mouth on his penis, but then stopped and told her to

get a cup.  D.R. testified she went downstairs, got the cup, went

back upstairs, and defendant again told her to put her mouth on his

penis.  D.R. said defendant then ejaculated in her mouth. 

Defendant then performed oral sex on D.R.  D.R. testified that,

during the ensuing conversation, defendant stated that "he didn't

know if most [family members] did this but he thought they should

because he was trying to teach [her]" about sex.  

     On cross-examination, counsel for defendant attempted to

elicit from D.R. specific dates, times, and places of the

incidents, and whether any witnesses were present.  

     Tonya, sister of D.R., testified next, and she recalled the

events surrounding the November 8 and 9, 1992, incident.  Tonya 

testified that D.R. had taken a bath upstairs after painting that

evening and had called for Tonya, but that defendant went upstairs

instead.  She then testified that D.R. went to the basement to take

a shower, and minutes later, while D.R. was still in the basement,

defendant went downstairs.  On cross-examination, Tonya  testified

as to her employment history, her knowledge of the June 1992

funeral, her recollection that defendant was in the basement with

D.R. in November 1992, and the terms of her visitation with

defendant.  

     The State's last witness was Officer Richard Roodhouse.  He

testified about the investigation of the allegations against

defendant.  Roodhouse testified that defendant acknowledged his

hand "fell against her breast" on one occasion and, on another

occasion, D.R. was getting up from a couch and she put her hand on

defendant's groin or penis.  Roodhouse testified that defendant

said he "didn't remove [either his hand from her breast or her hand

from his groin or penis] right away because he had taken some

psychology courses, and the *** courses had taught him not to do so

because it would make that gesture appear dirty."  He also

testified that defendant acknowledged taking the girls for rides in

the country and talking about sex "because he didn't want [them] to

be naive about sex."  Defendant also told Roodhouse that D.R. had

the dates all wrong.  

     Defendant's brother, James, testified for the defendant. 

James  testified about the events surrounding the June 1992 funeral

and his work schedule.  

     Defendant's brother, Bill, testified next about the events of

the June 1992 funeral.

     Six other witnesses testified that they helped remodel or

observed the remodeling of defendant's new home.  

     Darcy, defendant's wife, testified next.  She testified as to

the events surrounding the June 1992 funeral, the routine she

typically followed, and observations she made during the remodeling

of her and defendant's new home.  

     Defendant testified next.  Defendant categorically denied all

incidents of sexual abuse.  Regarding the November 8 and 9, 1992,

incident, defendant testified that both Tonya and D.R. were in the

bathroom upstairs trying to get paint out of D.R.'s hair. 

Defendant testified that he told D.R., through the bathroom door,

to go to the basement and let the shower water "beat [the paint]

out" of her hair.  Defendant testified that Tonya stayed in the

bathroom upstairs while D.R. went down to the basement and took a

shower.  He testified that he stayed in the kitchen and did not go

into the basement until D.R. had already gone back upstairs into

the bathroom where Tonya was.  After that, he testified, he went to

the basement and stoked the wood-burning furnace and was only in

the basement for approximately five minutes.

     Defendant acknowledged his conversations with Roodhouse

regarding defendant touching D.R.'s breast and her touching his

groin.  On cross-examination, defendant also testified to only two

occasions, occurring years apart, when he was driving in the

country that he talked with his daughters about sex.  Defendant

testified regarding the psychology course that he took, but never

finished, where he learned not to take his hand away from D.R.'s

breast too quickly or remove D.R.'s hand from his groin or penis

because it would make the gesture appear dirty.  Defendant also

testified that on November 9, 1992, the only people painting and

remodeling in his new house were himself, Tonya, and D.R.

     Before the case was given to the jury for decision, defendant

moved to have the charge dismissed.  Defendant argued that the

charge did not state an offense and asserted that the evidence did

not support a conviction.

     After hearing the arguments of counsel, the trial court first

denied the motion for a directed finding, stating that "the

evidence is sufficient that a jury can reasonably find the

defendant guilty of the charge."  The trial court then discussed

defendant's motion to dismiss and determined that dismissal should

be granted because the charge failed to state an offense.

     In granting the motion, the trial court explained that an

allegation regarding the child victim's buttocks did not charge the

offense of aggravated criminal sexual abuse, relying on People v.

Nibbio, 180 Ill. App. 3d 513 (1989).  However, after the parties

filed post-judgment motions, the trial court reconsidered its

reasoning.  On reconsideration, the trial court agreed with the

State that sexual conduct includes the knowing touching of the

victim's body by the penis of the accused.  However, to prosecute

such a charge, the State must allege and prove that the touching

was done "for the purpose of sexual gratification or arousal of the

victim or of the accused."  720 ILCS Ann. 5/12--12(e) (Smith-Hurd

Supp. 1996).  Relying on People v. Edwards, 195 Ill. App. 3d 454

(1990), the trial court,  stated that that element was not alleged

in the amended information and the order dismissing the charge

would stand.

     Before addressing the State's argument, we note that defendant

failed to file a brief in this appeal.  However, because we find 

the issue presented relatively straightforward, we may decide this

case without an appellee's brief in accordance with First Capitol

Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133

(1976) (holding that a reviewing court should decide the merits of

an appeal where the record is simple and the claimed error is such

that a decision can be made easily without the aid of an appellee's

brief); see also Exline v. Exline, 277 Ill. App. 3d 10, 13 (1995).

     The State argues that reversal of the trial court's dismissal

order is required, relying on the authority of People v. DiLorenzo,

169 Ill. 2d 318 (1996).  The State contends that, based on

DiLorenzo, the allegations in the amended information were

sufficient to state the offense of aggravated criminal sexual

abuse.  

     We are obliged to follow the precedents of our supreme court. 

A settled rule of law that contravenes no statute or constitutional

principles should be followed under the doctrine of stare decisis

unless it can be shown that serious detriment prejudicial to the

public interest is likely to result.  Pasquale v. Speed Products

Engineering, 166 Ill. 2d 337, 349 (1995).  Stare decisis is a

policy of the courts to stand by precedent and leave settled points

of law undisturbed.  Charles v. Seigfried, 165 Ill. 2d 482, 492

(1995).  Additionally, our appellate court lacks the authority to

overrule or modify decisions of our supreme court.  People v.

Woodard, 276 Ill. App. 3d 242, 245 (1995); Vonholdt v. Barba &

Barba Construction, Inc., 276 Ill. App. 3d 325, 329 (1995).  Thus,

it is our duty to examine the DiLorenzo decision and determine

whether the material facts found by the Illinois Supreme Court in

DiLorenzo are similar to or different from those facts in the

present case.    

     In DiLorenzo, the defendant was charged with, inter alia,

aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38,

par. 12--16(c)(1)(i) (now 720 ILCS Ann. 5/12--16(c)(1)(i) (Smith-

Hurd Supp. 1996))).  The indictment was in writing, specifically

named the alleged committed offenses, and provided citation to the

relevant statutory provisions, date of the offense, county of its

occurrence, and the defendant's name.  Further, the indictment, in

the words of the statute, stated that the defendant committed the

offense of aggravated criminal sexual abuse in that

     "he, who was 17 years of age or older, knowingly committed an

     act of sexual conduct with [C.R.] who was under 13 years of

     age when the act was committed."

     Following a bench trial, the defendant was found guilty of

aggravated criminal sexual abuse and was sentenced; the appellate

court affirmed.  The defendant appealed, asserting that the

indictment was fatally defective in that the aggravated criminal

sexual abuse charge failed to explicitly state that the alleged

"sexual conduct" with C.R. was "for the purpose of sexual

gratification or arousal of the victim or the accused" and also

that the indictment failed to set forth with particularity the

allegedly wrongful acts that constituted "sexual conduct."

     The DiLorenzo defendant, like defendant in the present case,

failed to challenge the sufficiency of the charging instrument in

a pretrial motion.  Therefore, the supreme court declined to

discuss the sufficiency of the charging instrument when attacked in

a pretrial motion.    Because defendant in the present case also

waited until the conclusion of the trial to attack the

information's sufficiency, we too decline to address the issue of

a pretrial attack of the charging instrument.  

     Instead, the DiLorenzo court stated that, when the sufficiency

of a charging instrument is attacked for the first time on appeal,

the standard of review is whether the charging instrument apprised

the defendant of the precise offense charged with enough

specificity to (1) allow preparation of her or his defense and (2)

allow pleading a resulting conviction as a bar to future

prosecution arising out of the same conduct.  DiLorenzo, 169 Ill.

2d  at 321-22, citing People v. Thingvold, 145 Ill. 2d 441, 448

(1991).  

     The DiLorenzo court determined that the phrase "for the

purpose of sexual gratification" or the definition of "sexual

conduct" were unnecessary to its disposition and declined to

distinguish our rationale in People v. Edwards, 195 Ill. App. 3d

454 (1990).  In Edwards, the defendant appealed two of his

convictions of aggravated criminal sexual abuse on the grounds that

the convictions were improperly charged.  The defendant argued

that, because the charges were based upon the defendant's "sexual

conduct" with the victim, the charging instrument should have

included the relevant provision of the statute, "for the purpose of

sexual gratification or arousal of the victim or the accused."  720

ILCS Ann. 5/12--12(e) (Smith-Hurd Supp. 1996). 

     This court reversed those convictions, stating that reference

to the definition of "sexual conduct" was essential to the offense

of aggravated criminal sexual abuse.  Edwards, 195 Ill. App. 3d at

457.  In interpreting clauses and definitions in statutes, courts

should construe those words in accordance with the statutory

definition.  DeBois v. Department of Employment Security, 274 Ill.

App. 3d 660, 664 (1995).  Because the charges in Edwards were, for

the most part, expressed in the language of the "sexual conduct"

definition and because the charges omitted the element that the

relevant conduct was committed "for the purpose of sexual arousal

or gratification," we held that the charges failed both to set

forth fully the nature and elements of the offense and to be as

fully descriptive as the language of the statute.  Edwards, 195

Ill. App. 3d at 457.

     In disregarding the Edwards rationale, the DiLorenzo court

theorized that, should the defendant have needed to know "some of

the details" of the charge, the defendant could have filed a

request for a bill of particulars.  Our supreme court concluded

that the defendant was aware of the nature of the charges against

him and that no impediment existed in the preparation of his

defense as a result of the manner in which the indictment charged

the offenses.  DiLorenzo, 169 Ill. 2d at 324-25.

     We determine that the material facts in the case at bar are

sufficiently analogous to the material facts of the DiLorenzo case. 

The amended information apprised defendant of the precise offense

charged with enough specificity to allow preparation of his defense

and to allow pleading a resulting conviction as a bar to future

prosecution arising out of the same conduct.  Our own review of the

record indicates that defendant was fully cognizant of the nature

of the charges against him, that he was being tried for "an act of

sexual conduct with [D.R.]."  Defendant called 10 witnesses,

including himself, to refute the specifically charged offense

occurring on or about November 10, 1992, as well as the allegations

surrounding the June 1992 incident taking place after the

relative's funeral.  Though defendant did not specifically defend

against each of the incidents to which D.R. testified, on at least

two occasions in the report of proceedings defendant did offer a

blanket denial of all allegations concerning sexual abuse of D.R. 

Counsel for defendant cross-examined D.R. in depth, attempting to

elicit specific dates, places, times, and witnesses present. 

Furthermore, defendant even secured broadcast schedules from an

area television station to defend against the alleged October 1992

incident. 

     Pursuant to the doctrine of stare decisis, we adhere to the

decision of our supreme court in DiLorenzo and reverse the trial

court's order dismissing the amended information charge against

defendant.  To the extent our holding in Edwards is inconsistent

with this result, Edwards is overruled.

     Finally, we compare the date of the disposition of DiLorenzo

with the pendency of the present case.  DiLorenzo was disposed of

on February 15, 1996, while the instant case was dismissed by the

trial court on May 3, 1995.  The State timely filed its appeal,

thus effecting a continuation in the proceedings.  See 134 Ill. 2d

R. 606.  In reversing the trial court's dismissal of the charging

instrument, we recognize that our supreme court has the inherent

power to give its decisions prospective or retrospective

application.  See Berryman Equipment v. Industrial Comm'n, 276 Ill.

App. 3d 76, 79 (1995).  Generally, a supreme court decision applies

retroactively to cases pending at the time the decision is

announced.  People v. Granados, 172 Ill. 2d 358, 365 (1996).  A

decision will be applied retroactively unless the court expressly

declares that its decision is a clear break with the past, such as

when it explicitly overrules its own past precedent, disapproves a

previously approved practice, or overturns a well-established body

of lower court authority.  People v. Phillips, 219 Ill. App. 3d

877, 879 (1991).  Because the DiLorenzo decision offers no such

declarations warranting only prospective application, its holding

will be applied retroactively, and, thus, DiLorenzo is controlling

in the appeal before us.

     For the foregoing reasons, the judgment of the circuit court

of Stephenson County is reversed, and the cause is remanded for

further proceedings.

     Reversed and remanded.

     GEIGER and RATHJE, JJ., concur.