ZENITH VENDING CORPORATION, Plaintiff-Appellant, v. THE VILLAGE OF SCHAUMBURG *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—88—0621

Opinion filed March 2, 1989.

Jenner & Block and Jeffrey Schulman, both of Chicago (Russell J. Hoover and Kevin P. Whaley, of counsel), for appellant.

Jack M. Siegel, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, the Zenith Vending Corporation, applied to the Village of Schaumburg, Illinois (the Village), for a 1985 business license and for a business license for 1986. The village manager denied the application for each year. On administrative review, a committee of the village board of trustees upheld each of the village manager's decisions.

Zenith brought an action in the circuit court of Cook County against defendants: the Village, two village managers, and the village clerk. The trial court upheld the 1985 license denial, but remanded the cause to the trustees for a second hearing on Zenith's 1986 license application. Following a second hearing, the trustees again upheld the village manager's denial of Zenith's 1986 license application.

Zenith returned to the trial court. After reviewing the record of the second administrative hearing, the trial court upheld the trustees' decision. Zenith appeals, contending that the findings and decision of the trustees, in each of the 1985 and 1986 hearings, were against the manifest weight of the evidence.

We affirm the judgments of the trial court.

BACKGROUND

I

A brief review of Schaumburg's licensing procedure is needed to better understand the facts in the case at bar. The operator of a business located in Schaumburg must annually apply to the Village for a license. After submission of the application to the village clerk, the chief of police investigates the applicant's background and reports his findings to the village manager. Schaumburg, Ill., Village Code §17—18.

The village manager initially determines whether to issue a license. He may deny a license for any one of the following reasons:

"(a) That the applicant lacks good character and reputation in the community, which character and reputation may be determined by previous arrest record, association with persons known to lack good moral character, open and notorious adultery, or other acts of moral turpitude, or other conduct contrary to good morals;

(b) That the applicant has previously been charged and convicted with a violation of other ordinances of the Village or the Statutes of the State of Illinois, except for traffic violations;

(c) That the applicant has outstanding judgments against him, or is otherwise determined to be not financially able to carry out the activities for which a license is sought;

(d) That the applicant and/or his representative in any way falsifies an application for a license to conduct any business within the Village of Schaumburg." Schaumburg, Ill., Village Code §17—18.

If the village manager denies a license application, the applicant can request a hearing before the public safety, health, and human resources committee of the Schaumburg board of trustees. The trustees must then hold a hearing, where the applicant may be represented by counsel and present evidence. The trustees then determine whether the village manager properly denied the license based on one or more of the above-stated grounds. If the trustees determined that the village manager improperly denied the license, or that the applicant's infractions were inadvertent or insignificant, then they may order the issuance of the license. Schaumburg, Ill., Village Code §17—18.

## II

The record shows that Zenith sells cigarettes through vending machines, which it places and services in business establishments. Zenith began its relationship with the Village with its application for a 1978 business license. The completed application indicated that James Contis, a salesman for Zenith, was Zenith's manager.

The village manager initially denied the application because Contis had a prior police record. Kenneth Leonard, then owner of Zenith, contacted various Village officials and informed them that Contis was not a manager. Leonard explained that Contis simply lacked the energy to obtain Leonard's signature. The village manager allowed Zenith to resubmit an application for a 1978 license bearing Leonard's signature, which he subsequently approved.

In 1980, George Moreno became the owner of Zenith, in addition to the Zenith Tobacco Company, and Apex and Deluxe Cigarettes. In 1982, Zenith acquired the stock of the other companies from Moreno.

The village manager denied Zenith's application for a 1985 business license. He concluded that Zenith failed to identify Moreno as its owner and Contis as its manager and to provide requested information relating to each. The village manager allowed the corporation to submit an amended application providing the requested information. The amended application for the 1985 license identified Larry C. Berndt as president of Zenith, Ben Silverstein as secretary, P.J. Orrico as treasurer, and James Contis as manager. The amended applica-

tion also described Moreno's ownership interest in Zenith, Zenith's ownership of the other companies, and Contis' arrest record. The village manager denied the amended application.

On December 12, 1985, the trustees' public safety committee held a hearing to review the village manager's denial of the application. The Village's only witness was Police Captain Alley. Alley stated essentially that: (1) Zenith lacked good character and reputation in the community due to its link with leaders of organized crime; (2) Zenith falsified its previous applications by failing to identify Moreno as its owner and Contis as its manager; and (3) Contis had been convicted of crimes. Two attorneys for the corporation were allowed to rebut Alley's statements. At the close of the hearing, the committee upheld the village manager's denial of Zenith's 1985 license application.

Zenith later submitted to the village manager an application for a 1986 business license. The application contained the same information as did the amended 1985 application. The village manager denied the application.

On February 13, 1986, the trustees' committee held a hearing to review the license application denial. Captain Alley again was the Village's only witness. He relied on his statement at the 1985 hearing, adding only a few remarks. Following a rebuttal by Zenith's attorney, the committee upheld the village manager's denial of Zenith's 1986 license application.

On March 26, 1986, Zenith filed an amended, multicount complaint in the trial court against defendants. Zenith alleged that: (1) following review of the 1985 and 1986 hearings by *certiorari*, those decisions should be reversed; (2) the 1985 and 1986 hearings deprived it of procedural due process; (3) the Village's 1985 and 1986 license denials deprived it of substantive due process; and (4) portions of Schaumburg Village Code section 17—18(a) were unconstitutionally vague and overbroad.

Defendants moved to dismiss the amended complaint and Zenith moved for summary judgment. On November 10, 1986, the trial court denied defendants' motion to dismiss and granted in part and denied in part Zenith's motion for summary judgment. The trial court first found that that portion of section 17—18(a), which prohibits "association with persons known to lack good moral character," was unconstitutionally vague and in violation of the first amendment to the United States Constitution (U.S. Const., amend. I). The court found that the 1985 licensing hearing did not deprive Zenith of procedural due process. Also, after review by *certiorari*, the court upheld the decision reached at the 1985 hearing.

The trial court, however, found that the 1986 hearing did nothing but repeat unsworn testimony, was impermissibly limited, and denied Zenith due process. The court ordered defendants to hold a new hearing on Zenith's 1986 license application.

On remand from the trial court, the trustees' committee held a second hearing on Zenith's 1986 license application denial. The record shows that both Zenith and the Village were represented by counsel. Additionally, the committee required witnesses to testify under oath, offered both sides an opportunity for cross-examination, and imposed no restrictions on time or production of evidence.

In an order entered February 10, 1987, the trustees' committee again upheld the village manager's denial of Zenith's 1986 license application. The committee found that the village manager's decision was proper under sections 17—18(a), (b), or (d). The committee disregarded that portion of subsection (a) which the court struck down as unconstitutional. Among its detailed findings, the committee found essentially that: (1) Zenith lacked good character and reputation in the community, in violation of subsection (a), due to its link with leaders of organized crime; (2) Contis had been charged with and convicted of crimes, in violation of subsection (b); and (3) Zenith falsified its previous applications, in violation of subsection (d).

Zenith returned to the trial court, seeking judicial review of the committee's February 10, 1987, order. After review by *certiorari*, the court upheld the decision in an order entered January 28, 1988. The trial court disregarded the evidence of an alleged connection between Zenith and leaders of organized crime, ruling that the evidence was worth little weight. The trial court also found no evidence that Contis had ever been convicted of a crime. Thus, the court ruled that the committee's finding regarding Contis' arrest record was against the manifest weight of the evidence.

The trial court found, however, that the record contained evidence to support the committee's finding on the falsification issue. Specifically, the record contained evidence that Zenith, on previous applications, failed to identify Moreno as its owner and Contis as its manager. The court found that the evidence of falsification supported also the committee finding that Zenith lacked good character and reputation in the community.

Following the entry of its order, the trial court found that there was no just reason to delay the enforcement or appeal of its November 10, 1986, order. (See 107 Ill. 2d R. 304(a).) Zenith appeals from both the November 10, 1986, and the January 28, 1988, orders.

OPINION

## I

Defendants first contend that the trial court should have dismissed this action based on the doctrine of *res judicata*. The record shows that Zenith filed its original complaint in this cause (No. 85—CH—11332) on November 13, 1985, after the village manager denied its application for a 1985 business license. Zenith also filed an action in Federal district court on November 30, 1985 (No. 85—C—9782), and another in the circuit court of Cook County on December 17, 1985 (No. 85—CH—12544). The latter two causes were eventually dismissed.

Defendants now contend that the doctrine of *res judicata* barred Zenith from filing its amended complaint challenging the committee's December 12, 1985, and February 13, 1986, decisions. Defendants argue that the amended complaint raised the same issues as were raised in the other circuit court action (No. 85—CH—12544) and the Federal district court action (No. 85—C—9782). Thus, Zenith could have litigated these issues in the prior actions. Consequently, the doctrine of *res judicata* barred Zenith from raising them in its amended complaint in this cause.

■ The doctrine of *res judicata* provides that a final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. The doctrine extends not only to what was actually decided in the original action, but also to all grounds of recovery or defense that could have been decided in the original action. *People v. Kidd* (1947), 398 Ill. 405, 408, 75 N.E.2d 851, 853-54; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 524, 395 N.E.2d 1143, 1148.

■ Thus, before an adjudication can bar a subsequent action, it must be determined whether the first action resulted in a final judgment on the merits. (*People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 69, 360 N.E.2d 773, 775.) A judgment cannot bar a subsequent action unless it is a final judgment on the merits, adjudicating the contested rights in a conclusive and definitive manner. *People ex rel. Williams v. Board of Education* (1932), 350 Ill. 597, 601, 183 N.E. 633, 634.

■ Defendants made this argument in their motion to dismiss the amended complaint. The trial court properly rejected defendants' argument and denied the motion. Based on the above principles, we

likewise reject defendants' contention.

The record shows that the lawsuit in the circuit court of Cook County (No. 85—CH—12544) was dismissed solely because of this pending suit and the suit pending in Federal district court. The dismissal was never intended to be a final judgment on the merits. Indeed, we note that Zenith appealed the dismissal to this court. We remanded the cause for consolidation with this action, which the trial court's November 10, 1986, order reflects. These facts show that the dismissal of the lawsuit in No. 85—CH—12544 was meant solely to assure that the issues would be considered in one cause and not multiple causes. Therefore, the dismissal was not a final judgment on the merits.

The dismissal of the Federal district court action (No. 85—C—9782) presents an even stronger case against the application of *res judicata*. The record shows that the Federal court dismissed that lawsuit by agreement of the parties. Of course, the dismissal was never intended to be a final judgment on the merits. Indeed, it was an accommodation to defendants, allowing them to defend the issues in one cause and not multiple causes. Once the issues were consolidated in one suit, defendants could not raise the dismissal as a bar. (See *Bernhardt v. Fritzshall* (1973), 9 Ill. App. 3d 1041, 1047-48, 293 N.E.2d 650, 655.) We hold that the doctrine of *res judicata* did not bar Zenith's amended complaint.

## II

We now reach the heart of this appeal. Was the committee's February 10, 1987, decision, which upheld the village manager's denial of Zenith's 1986 business license application, against the manifest weight of the evidence? In its January 28, 1988, order, the trial court reviewed the committee's decision by way of *certiorari*.

■ In a *certiorari* proceeding, the relevant records of the administrative agency are brought before the court. The record must show that the agency acted upon evidence, and it must contain the evidence upon which the agency based its decision. The trial consists only of an inspection of the record; the court cannot consider any matter not appearing in the record. The only province of the trial court is to ascertain from the record whether the agency had jurisdiction, whether it exceeded its jurisdiction, whether it proceeded according to law and acted on evidence, and whether the agency's decision is discreet or wise, but only whether there is anything in the record that fairly tends to sustain the agency's action. The question before the court is never whether there is any evidence fairly tending to support the or-

der reviewed. Where the agency is not arbitrary in its findings and where the record contains evidence that fairly tends to support the findings, a reviewing court may not substitute its judgment for the discretion and judgment of the agency. *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 884, 324 N.E.2d 65, 70 (and cases cited therein).

■■ ■ When reviewing a record by *certiorari*, the applicable standard is whether there is any evidence in the record reasonably tending to sustain the agency's decision. The reviewing court has no power to weigh the evidence; the case is not retried. If there is any evidence that fairly tends to sustain the agency's decision, it cannot be disturbed. (25 Ill. App. 3d at 890, 324 N.E.2d at 74.) In other words, a court may not set aside an agency's determination unless it is palpably or manifestly against the weight of the evidence. *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188, quoting *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394, 400-01, 50 N.E.2d 453, 457.

■■ ■ Additionally, we agree with the trial court that this record contains rank hearsay evidence. True, where hearsay evidence appears in an administrative record, the fact finder may not consider it in reaching a decision. Any factual determination based on hearsay and unsupported by other competent evidence in the record must be reversed. (*Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 408, 451 N.E.2d 1282, 1290.) However, the converse is also true: where a record contains competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error. *Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 501, 415 N.E.2d 1249, 1253.

■ Applying these principles to the case at bar, we uphold the trial court's judgment. Put simply, the record of the committee's February 10, 1987, decision contains evidence that fairly tends to support the decision.

We focus on the committee's finding that Zenith falsified its previous business license applications. The form of the Village's business license application changed between 1978, when Zenith applied for its first license, and 1985, when the committee held its hearing on Zenith's license denial. However, at least as far back as 1983, the application plainly and clearly requested information on, *inter alia*: (1) the business' manager or agent, and (2) the company's ownership.

The record shows that in its 1983, 1984, and first 1985 business license applications, Zenith did not answer various questions regard-

ing its manager or agent. However, the record contains evidence that Contis was indeed Zenith's manager during those years. Zenith placed advertisements in trade magazines which described Contis as "operations manager." Trade magazine articles also described Contis as "operations manager." Contis himself issued newsletters in which he described himself as "director of operations." It was not until Zenith submitted its amended 1985 license application that it listed Contis as its manager.

Also at least as far back as 1983, the Schaumburg business license application requested information on the company's ownership. Specifically, the application plainly and clearly asks a corporate applicant to identify not only its principal officers, but also any additional principals. The record shows that in its 1983, 1984, and first 1985 business license applications, Zenith did not provide the Village with any information on Moreno. However, the record contains evidence that Moreno became the owner of Zenith in 1980. Again, it was not until Zenith submitted its amended 1985 license application that it described, or even identified, Moreno as its owner.

Zenith argues here, as it argued before the trial court, that its failure to provide the requested information on Contis and Moreno was an inadvertent or insignificant infraction, excusable under section 17—18 of the Schaumburg Village Code. We agree with the trial court that the committee viewed the issue differently, and that the trial court could not, as we cannot, substitute our view of the evidence for that of the committee.

This record contains evidence that supports the committee's finding that Zenith violated Schaumburg Village Code section 17—18(d). As stated earlier, section 17—18 provides that a violation of any one of its four subsections is sufficient to deny a business license application. Consequently, we affirm the trial court's January 28, 1988, order upholding the decision of the Public Safety, Health, and Human Resources Committee of the Schaumburg Board of Trustees, which in turn upheld the village manager's denial of Zenith's application for a 1986 business license.

Zenith appeals also from the trial court's November 10, 1986, order, which reviewed the committee's December 12, 1985, hearing. Zenith contends that the committee's decision, which upheld the village manager's denial of its 1985 business license application, is also against the manifest weight of the evidence. We agree with Zenith that both hearings raised the same issues. Further, after reviewing the 1985 administrative record by *certiorari*, the trial court upheld the committee's decision on the same grounds as it subsequently up-

held the committee's February 10, 1987, decision. As with the February 1987 decision, we agree with the trial court that the committee's December 12, 1985, decision was not against the manifest weight of the evidence.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.