Rule 23 order filed
August 11, 2014;
Motion to publish granted
October 3, 2014.

2014 IL App (5th) 130244

NO. 5-13-0244

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| ILLINI ENVIRONMENTAL, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-MR-178 |
| | ) | |
| THE ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | Honorable |
| | ) | Richard A. Aguirre, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Cates concurred in the judgment and opinion.

**ORDER**

¶ 1    Illini Environmental, Inc. (Illini), appeals from the trial court's May 6, 2013, order denying its motion for summary judgment.  On appeal, Illini argues that dismissal of an enforcement action filed by the Illinois Environmental Protection Agency (EPA or Agency) against Illini was *res judicata* on certain issues of fact in Illini's declaratory judgment action.  Illini claims that the EPA accepted its proffered "Compliance Commitment Agreement" and therefore cannot pursue enforcement on one of the two violation notices.  Illini also argues that the trial court erred in finding that Illini was responsible for determining whether waste was hazardous.  Illini further argues that the

1

trial court erred in concluding that Illini violated Illinois law in listing itself as a generator of waste that it transported from another company to an Illinois landfill. Finally, Illini argues that the trial court was incorrect in concluding that the Illinois EPA complied with applicable law when it posted information on its website about Illini's violations. We affirm.

¶ 2                                    FACTS

¶ 3    Illini is an Illinois corporation based in Caseyville. Illini operates a solid waste management facility, but does not have EPA permission to receive or treat hazardous waste.

¶ 4                          2010 Violation–SG Solutions

¶ 5    In early May 2010, an Illini vehicle went to Indiana to pick up waste from SG Solutions. SG Solutions previously tested the waste and learned that it contained hazardous levels of arsenic and chromium. SG Solutions properly labeled the drums as containing hazardous waste. When the Illini driver arrived, he delivered an Illini-generated manifest for these drums of waste. The manifest indicated that the waste Illini was to transport was nonhazardous. The Illini driver changed the identification labels on the drums to nonhazardous to match the manifest and then obtained the signature of an SG Solutions agent on Illini's manifest. Illini transported the waste to its Caseyville facility and then processed the waste by mixing it with other waste to create a solid. Illini shipped the new solidified waste to an Illinois landfill. The records that went with the solidified waste to the landfill indicated that the waste was not special or hazardous.

2

¶ 6    Sometime later, SG Solutions reported to the EPA that Illini's documentation mislabeled the waste it picked up as nonhazardous. SG Solutions reanalyzed the waste samples and reached the same conclusion it had previously reached that the waste was hazardous. Thereafter, in September 2010, the EPA issued a notice of violation (Notice 01282) to Illini indicating that Illini violated several Illinois Pollution Control Board (Board) regulations and a condition of its permit. Additionally, the EPA alleged that Illini violated several subsections of section 21 of the Environmental Protection Act (Act) by treating hazardous waste without a permit to do so. 415 ILCS 5/21(d), (e), (f) (West 2008). The EPA asked Illini to cease accepting and treating hazardous waste.

¶ 7    The EPA issued a separate notice to SG Solutions for its involvement.

¶ 8    Illini responded and denied that it had violated the Act or the Board regulations, and denied that the waste was hazardous. Illini requested a meeting to address Notice 01282. The EPA agreed to the meeting, explaining that Illini must provide a written response following the meeting and propose a "Compliance Commitment Agreement" (CCA) containing a timeline for achieving compliance. The EPA held the meeting, and afterwards Illini sent a letter in November 2010 denying all violations. In the letter, Illini stated that it was going to purchase a computer system for cross-checking customer waste profiles against shipment manifests in order to mitigate the chance for miscommunication. The EPA treated Illini's letter as its CCA and sent its response. In this letter, the EPA mistakenly identified the company that submitted the proposed CCA as SG Solutions instead of Illini. The EPA rejected the proposed CCA. Acknowledging

3

its mistake, the EPA claims that despite the misnomer, its rejection operated as a rejection of Illini's November 2010 CCA.

¶ 9    On March 1, 2011, the EPA sent Illini a notice of its intent to pursue legal action.

¶ 10                              2011 Violation–Tri-Rinse

¶ 11    In December 2010, Illini picked up a load of liquid waste from a Missouri facility, Tri-Rinse, and brought it back into Illinois for disposal in Jackson County.  Upon accepting the load of waste, Illini terminated the manifest offered by Tri-Rinse and created a substitute one that identified Illini–not Tri-Rinse–as the generator of the waste. After leaving the liquid waste at the Jackson County, Illinois, facility for solidification and disposal, an apparent chemical reaction occurred, resulting in the evacuation of several homes and hospitalization of some of the residents.

¶ 12    The EPA then issued a notice of violation to Illini (Notice 01008) informing Illini that it violated administration regulations by not identifying the actual generator of the waste on the manifest.  The EPA also made written demand to Illini that it correctly identify the generator of any waste Illini picks up for disposal.  Specifically, the EPA directed Illini to list itself as the generator only if Illini generated the waste in its Caseyville facility.  The EPA rejected Illini's CCA.  Illini refused to meet with the EPA to discuss this violation.  The EPA notified Illini that it intended to pursue legal action.

¶ 13                              Court Proceedings

¶ 14                         *Declaratory Judgment Action*

¶ 15    Illini filed its declaratory judgment suit against the EPA in 2011.  The court granted the EPA's motion to dismiss.  Illini refiled the petition.  The amended petition

4

asked the court for declarations about each of the two notices of violation, and about the EPA's reporting of each notice on its website. Because the three counts of the complaint are the foundations of Illini's summary judgment motion, we outline each.

¶ 16 Count I sought a declaration on a general basis that applicable administrative regulations do not place the responsibility for the correctness of the manifests on the entity transporting the waste. Specifically, Illini asked the court to declare that because Illini did not generate the SG Solutions waste it picked up for transport in Indiana, Illini bore no responsibility to ensure that the manifest was correct, and therefore Illini violated no regulations in its handling of the waste. Alternatively, Illini asked the court to declare that Notice 01282 is resolved because the EPA named SG Solutions instead of Illini when the EPA rejected its CCA.

¶ 17 Count II asked the court to declare that Illini violated no regulations in listing itself on the manifest as the "generator" of the waste, when it took immediate possession of Tri-Rinse's waste and did not stop at its own facility in Caseyville before transporting the waste to another facility.

¶ 18 Count III asked the court to declare that the EPA violated the Environmental Protection Act by posting a press release on its website about the EPA's filing of a notice of violation against Illini. Illini also sought a declaration that the Act mandates that the EPA strike reference to these notices of violation when the alleged violators challenge the notices.

5

¶ 19        *EPA's Enforcement Action on Notice 01282*

¶ 20    One month later, the Illinois Attorney General filed its enforcement action against Illini on Notice 01282 in St. Clair County circuit court. Illini filed a motion to dismiss on the basis that its declaratory judgment case already presented these issues. Alternatively, Illini argued that the complaint should be dismissed pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)). The theory of Illini's motion was that the State failed to allege facts supporting its supposed violation of applicable regulations or laws, and therefore the notice attempted to impose obligations upon Illini not required by law.

¶ 21    With the knowledge that there were simultaneous cases pending in the circuit court with the same underlying set of facts, the court in the enforcement action reserved its ruling on Illini's motion to dismiss until the court in the declaratory judgment action ruled on the EPA's motion to dismiss. In the declaratory judgment action, the court partially granted the EPA's motion to dismiss. After this ruling in the declaratory judgment case, the court in the enforcement action entered an order setting a hearing on Illini's motion to dismiss. The hearing was set for March 27, 2012. No one from the EPA appeared at the motion hearing, and the enforcement action court granted Illini's motion to dismiss. The court provided no specific foundation for its order.

¶ 22                    Illini's Summary Judgment Motion

¶ 23                            *Count I*

¶ 24    Illini filed its motion for summary judgment in the declaratory judgment action. Illini argued that the circuit court's dismissal of the enforcement action, when an EPA

6

representative did not appear in court for a scheduled hearing, barred the EPA from attempting to enforce Notice 01282 because of application of *res judicata*. Alternatively, Illini contended that the EPA's inclusion of SG Solutions' name on its rejection of its CCA for Notice 01282 equated to the EPA's acceptance of Illini's agreement. Illini also argued that Notice 01282 was defective because it ignored Illini's claim that as a transporter of waste, it had no obligation to confirm that the manifest was accurate, and also claimed that the EPA ignored its claims that its own tests of the waste showed that the waste was not hazardous.

¶ 25                                                    *Count II*

¶ 26   With respect to Notice 01008, Illini argued that regulations did not require it to list Tri-Rinse as the generator of the waste.

¶ 27                                                   *Count III*

¶ 28    Illini argued that section 31(c)(1) of the Act (415 ILCS 5/31(c)(1) (West 2008)) did not authorize the EPA to publish the notices of violation on its website before the notices were referred to the Attorney General for legal action.

¶ 29                                     *EPA's Response to Motion*

¶ 30   The EPA attached an affidavit and several documents to support its contention that SG Solutions' waste was hazardous. Regarding the *res judicata* claim, the EPA argued that the trial court's dismissal of its enforcement action was not a final adjudication on the merits of Illini's claims. The EPA discounted its misnomer in referring to the CCA as being SG Solutions' agreement rather than Illini's agreement, arguing that the intent of its rejection remained clear despite the misnomer and that the mistake does not shield Illini

7

from enforcement. As to the Tri-Rinse notice, the EPA claimed that the facts are undisputed–that Illini falsely listed itself as the generator on the manifest involving the Tri-Rinse waste transported to an Illinois landfill. Finally, the EPA contends that section 4(b) of the Act (415 ILCS 5/4(b) (West 2008)) mandates its duty to disseminate information related to hazardous waste and enforcement actions, and that publication of the notices was consistent with its authority pursuant to section 31(c)(1) of the Act (415 ILCS 5/31(c)(1) (West 2008)).

¶ 31                           *The Court's Ruling*

¶ 32     The circuit court denied Illini's motion. The court determined that dismissal of the related enforcement action contained no explicit ruling on the merits of the claims, and thus Illini could not use the doctrine of *res judicata* to invalidate the EPA's enforcement of Notice 01282. The court concluded that although the EPA mistakenly labeled its rejection of the CCA as a rejection of SG Solutions' CCA, the intent of the rejection was certain. Alternatively, even if somehow the misnomer invalidated the EPA's rejection of Illini's CCA, the Attorney General maintained the authority to enforce a violation of the Act and regulations. The court found that Illini was aware or should have known that the originally labeled hazardous waste it picked up at SG Solutions was, in fact, hazardous, and that in modifying the labels on the barrels to indicate that they contained nonhazardous waste in order to match Illini's manifest, Illini was aware of the illegality of doing so. While the court stated that it would not hold as a matter of law that Illini violated the regulations, the court could not agree with Illini's claim that it had no knowledge. The court's order stated, "[t]he Illinois Attorney General can proceed with

8

enforcement against Illini for the violations alleged" in Notice 01282. The court also ruled that Illini violated regulations regarding its handling of the Tri-Rinse waste because Illini was fully aware that it did not generate that waste, despite what it stated on the manifest. Finally, the court found that the EPA had statutory authority to establish and maintain public information of its enforcement actions on the website pursuant to both sections 4 and 31 of the Act, as well as pursuant to the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2008)). Illini appealed this order.

¶ 33                                LAW AND ANALYSIS

¶ 34 In determining whether summary judgment was correct, the trial court must consider all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). If there are disputed facts, then the trial court must "view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the facts presented in favor of the nonmovant." *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 312, 807 N.E.2d 480, 487 (2004) (citing *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736, 739-40 (1993)). Courts should not use summary judgment to resolve questions of fact, but to determine whether a factual question exists. *Id.* (citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517, 622 N.E.2d 788, 792 (1993)). A mere factual possibility will not defeat a summary judgment motion. *Wilmere v. Stibolt*, 152 Ill. App. 3d 642, 648, 504 N.E.2d

916, 919 (1987).  In considering the motion, the court should not ignore evidence or inferences negative to plaintiff's position.  *Yacko v. Curtis*, 339 Ill. App. 3d 299, 302, 789 N.E.2d 1274, 1276 (2003).

¶ 35   A decision to deny summary judgment on a declaratory judgment action is reviewed *de novo*.  See *Farmers Automobile Insurance Ass'n v. Coulson*, 402 Ill. App. 3d 779, 780, 931 N.E.2d 1257, 1259 (2010).

¶ 36                                        *Res Judicata*

¶ 37   *Res judicata* is a legal doctrine that serves to bar a subsequent action if an initial court action concluded with a final judgment on the merits involving the same claim and the same parties or their privies.  *Sherrod v. Ramaswamy*, 314 Ill. App. 3d 357, 361, 732 N.E.2d 87, 90 (2000); *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92, 753 N.E.2d 1138, 1144 (2001).  The three required elements to establish *res judicata* are a final judgment on the merits rendered by a court of competent jurisdiction, identical causes of action, and identical parties or privies.  *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 558, 914 N.E.2d 577, 588 (2009).  The burden of proof rests with the party seeking to use the doctrine.  *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 915, 678 N.E.2d 308, 310 (1997).

¶ 38   In this case, the trial court refused to apply the doctrine of *res judicata*.  The court concluded that Illini did not prove that the dismissal of the EPA's enforcement action was a final judgment on the merits.  A final judgment on the merits is one "adjudicating the contested rights in a conclusive and definitive manner."  *Zenith Vending Corp. v. Village of Schaumburg*, 180 Ill. App. 3d 354, 360, 535 N.E.2d 1033, 1037 (1989).

10

¶ 39    The written court order which dismissed the EPA enforcement action included no basis for the dismissal.  Illini's main argument in its motion to dismiss the enforcement action involved section 2-619(a)(3) of the Code of Civil Procedure–that the declaratory judgment action between the same parties was currently pending.  735 ILCS 5/2-619(a)(3) (West 2008).  Illini did not base its argument on the merits of the pending declaratory judgment action, but simply argued that the two cases involved the same set of facts and issues.  The court's order could have been in response to this argument.  The procedural history from the enforcement action case supports this possibility.  The enforcement action court would not rule upon Illini's motion to dismiss until the declaratory judgment court ruled upon the EPA's motion to dismiss.  As soon as the declaratory judgment court partially granted the EPA's motion to dismiss, the enforcement action court set the hearing on the pending motion in its court, and at the hearing dismissed the EPA's complaint.  Because Illini's motion was based upon section 2-619(a)(3) and not upon the merits of the case, we find that the trial court's order was based on the identity of facts and issues in the two cases in accordance with the judicial economy goals of section 2-619(a)(3).

¶ 40    Dismissals pursuant to section 2-619(a)(3) are not final adjudications on the merits.  *Zenith Vending Corp.*, 180 Ill. App. 3d at 360-61, 535 N.E.2d at 1036-37.  The essential goal of section 2-619(a)(3) is judicial economy, relieving courts and litigants of the burden of duplicative litigation.  *Ransom v. Marrese*, 122 Ill. 2d 518, 530, 524 N.E.2d 555, 560 (1988).  A section 2-619(a)(3) dismissal does not reach substantive claims, but serves to suspend the proceedings, allowing the plaintiff the opportunity to renew the

claim at another time and/or in a different forum.  *International Insurance Co. v. Morton Thiokol, Inc.*, 185 Ill. App. 3d 686, 691, 542 N.E.2d 6, 9 (1989).  Therefore, dismissal pursuant to this section does not constitute a final judgment on the merits.  *Zenith Vending Corp.*, 180 Ill. App. 3d at 361, 535 N.E.2d at 1037.

¶ 41     Illini cites to *Avery v. Auto-Pro, Inc.*, 313 Ill. App. 3d 747, 731 N.E.2d 319 (2000), in support of its claim that the dismissal was final and on the merits.  Upon review of this case, we conclude that it is distinguishable.  The prior claim in *Avery* was a dismissal on the basis of the statute of limitations pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 1998)).  If a party did not timely file suit in keeping with a statute of limitations, the party cannot make the claim.  A resulting dismissal because a party violated the statute of limitations constituted a final judgment on the merits.  *Avery*, 313 Ill. App. 3d at 750, 731 N.E.2d at 322.

¶ 42     Section 2-619(a)(3) is designed to avoid duplicative litigation.  If we accepted Illini's theory, court two could dismiss the action because it was pending in court one, and then court one could dismiss the action because of the dismissal in court two.  The Code of Civil Procedure does not contemplate that outcome.  The intent of the rule is that one of the two cases will proceed after dismissal of the other.  Accordingly, we find that the trial court properly denied Illini's claim that the doctrine of *res judicata* barred the enforcement action on the EPA notice of violation.

¶ 43               Count I–Rejection of Illini's Compliance Commitment Agreement

¶ 44     Illini argues that the EPA did not provide the required statutory notice that it rejected Illini's CCA.  Section 31(a)(7) of the Environmental Protection Act requires the

12

EPA to respond to an alleged violator's CCA within 30 days. 415 ILCS 5/31(a)(7) (West 2008). Illini acknowledges that its attorney received a certified letter from the Illinois EPA in December 2010, rejecting a CCA. The EPA sent the letter within the 30 days, named Illini as the violator, was directed to Illini's attorney, listed the correct notice of violation number 01282, and named and rejected the November 30, 2010, CCA Illini sent to the EPA. However, because the letter stated that SG Solutions submitted the CCA (instead of Illini submitting the November 30, 2010, CCA), Illini argues that the EPA failed to timely reject its CCA, and thus is prohibited from referring the matter to the Attorney General for prosecution. Section 31(a)(9) of the Act provides:

> "The Agency's failure to respond to a written response submitted *** within 30 days *** shall be deemed an acceptance by the Agency of the proposed Compliance Commitment Agreement for the violations alleged in the written noticed issued *** as contained within the written response." 415 ILCS 5/31(a)(9) (West 2008).

¶ 45 The Illinois legislature enacted section 31 of the Environmental Protection Act to establish a prelitigation process for the alleged violators to meet and work with the EPA to correct violations. See *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 226, 830 N.E.2d 444, 448 (2004). If the EPA and the alleged violator are not able to reach an agreement, then sections 31(b) and (c) of the Act direct the EPA to refer the case to the Attorney General or to a State's Attorney for prosecution. 415 ILCS 5/31(b), (c) (West 2008).

¶ 46    In this case, the Illinois EPA timely rejected the CCA, albeit with the aforementioned misnomer.  Illini takes the position that the EPA, with this error, forfeited all rights to prosecute Illini for violations of the Act.  Illini cites no legal authority for this theory.  Section 31(a)(7) specifically states that within those 30 days, the EPA must send a written response "upon the person complained against."  415 ILCS 5/31(a)(7) (West 2008).  Reviewing the EPA letter at issue, there were numerous identifying details in the letter, not the least of which was that the letter indicated that Illini Environmental of Caseyville was the violator, and listed the correct notice of violation number.  We conclude that the letter served as a timely rejection of Illini's CCA.

¶ 47    Even if somehow the rejection letter was deficient, we conclude that the Attorney General maintains the right to enforce violations of the Act pursuant to section 31(a)(10) of the Act.  415 ILCS 5/31(a)(10) (West 2008).  Section 31(a)(10) provides that even in situations where the EPA has accepted a violator's CCA, the Agency is allowed to continue negotiations on matters which are still in disagreement.  *Id.*

¶ 48                Merits of Count I of Illini's Declaratory Judgment Action

¶ 49    Count I involved the waste Illini picked up in Indiana from SG Solutions.  Illini asked the court to declare that it did not generate the waste and therefore did not violate any laws or regulations or the terms of its operating permit.  Illini also sought the court's declaration that despite SG Solutions' hazardous label on its barrels of waste, Illini had no obligation to certify or confirm that information.

¶ 50    The terms and provisions of the Act must be liberally construed in order to effectuate its purposes.  415 ILCS 5/2(c) (West 2008).  Furthermore, the Board's

14

administrative regulations have the effect of law. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 162, 613 N.E.2d 719, 724 (1993). We must look to the language of the regulations to ascertain the Agency's intent. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380, 899 N.E.2d 227, 232 (2008). Courts must give substantial deference to the agency's reasonable interpretation of its own regulations and associated statutes. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9, 925 N.E.2d 1131, 1143 n.9 (2010). With these general principles in mind, we turn to the provisions the EPA claims Illini violated.

¶ 51 Sections 21(d), (e), and (f) of the Environmental Protection Act prohibit the treatment or transportation of hazardous waste in violation of conditions of a permit issued by the Agency, or in violation of any regulations or standards adopted by the Board pursuant to the Act. 415 ILCS 5/21(d), (e), (f) (West 2008). "No person may conduct any hazardous waste storage, hazardous waste treatment, or hazardous waste disposal operation *** [w]ithout a *** permit for the *** hazardous waste management[ ] facility ***." 35 Ill. Adm. Code § 703.121(a)(1) (2003).

¶ 52 Both parties agree that Illini's operating permit does not authorize it to receive or treat hazardous waste at its facility. There is no dispute that SG Solutions tested the waste and determined that it contained hazardous levels of both arsenic and chromium. In accordance with those test results, SG Solutions labeled the waste in the barrels as hazardous. In this case, Illini's agent, upon arrival at the Indiana facility, modified the barrels to match Illini's manifest. The manifest indicated the waste to be picked up was

15

nonhazardous, while the barrels clearly were labeled as hazardous. We do not know why Illini's agent did not try to confirm that the barrel contents were actually hazardous before he made these changes. However, that reason is irrelevant. Illini's permit did not grant Illini the authority to transport hazardous waste to its Caseyville facility. This is precisely what Illini did.

¶ 53    Illini also disputes that the waste was actually hazardous. In two separate tests performed by SG Solutions, the results indicated that the waste was hazardous. One week after Illini took delivery of the SG Solutions waste, an Illini employee questioned the discrepancy regarding the waste classification. Illini still had the SG Solutions drums in its possession, although Illini had already removed, consolidated, and transported the waste to a landfill in East St. Louis. An independent laboratory hired by Illini tested the residue from the drums and determined that the residue was not hazardous. Although both SG Solutions and Illini tested the waste for hazardous properties with different outcomes, SG Solutions conducted testing on the full sample, while Illini's testing, at best, was only of residue. Illini had already shipped the processed waste to the landfill when it decided to test the residue. Furthermore, Illini failed to attest to the methods used to sample or analyze the residue, does not state that the residue tested was representative of the waste, and does not state that the sample and test by the independent laboratory complied with Board regulations. We agree with the trial court's conclusion that Illini was unable to establish that the waste was not hazardous.

¶ 54    Furthermore, we agree with the trial court that Illini must be charged with the knowledge that the waste was hazardous. To hold otherwise defies logic. SG Solutions

16

labeled the barrels of waste as hazardous.  SG Solutions' labels provided the necessary information to mandate inquiry into the nature of the waste, because Illini had no ability to receive and transport hazardous waste.  Illini contends that because the agent for SG Solutions signed the manifest that listed the waste as nonhazardous, this intervening act by SG Solutions relieved Illini of any responsibility to ascertain the true nature of the waste Illini was planning to haul.  We disagree.  Regulations require the generator of the waste to create and sign a manifest.  In this case, Illini created the manifest–not SG Solutions.  Illini listed the waste as nonhazardous.  However, Illini's manifest was in direct conflict with the labeling and sample test results from the barrels.  The regulations do not suggest that Illini can rely on the manifest labeling alone to avoid obligations.  However, in this case, Illini went an additional step in modifying the label on each barrel it planned to transport.  Knowledge or intent is not required to prove violation of the Environmental Protection Act.  See *Hindman v. Pollution Control Board*, 42 Ill. App. 3d 766, 769, 356 N.E.2d 669, 672 (1976); *People v. A.J. Davinroy Contractors*, 249 Ill. App. 3d 788, 792-93, 618 N.E.2d 1282, 1286 (1993).  While lack of knowledge could be relevant to the penalty the Agency may impose, lack of knowledge has no bearing on whether Illini committed violations.  415 ILCS 5/42(h)(2) (West 2008).

¶ 55   Based upon our review of the record, we find that the trial court properly denied Illini's request for a summary judgment on count I of its declaratory judgment.  Illini's claim that it did not violate its permit or regulations by transporting and receiving the hazardous waste at its Caseyville site is unsupported by the evidence or the law.

¶ 56            Merits of Count II of Illini's Declaratory Judgment Action

¶ 57   Count II of Illini's declaratory judgment dealt with pickup of waste on December 17, 2010, in Missouri. Illini substituted a manifest in picking up the waste for the one prepared by the generator of the waste, Tri-Rinse. Illini claims that the EPA improperly issued notice of violation number 01008 because it did not violate any regulations in its handling of the Tri-Rinse waste.

¶ 58   Section 21(j) of the Act prohibits any company from conducting any special waste transportation operation that violates any Board regulations. 415 ILCS 5/21(j) (West 2008). If a carrier transports special waste, a manifest listing the "generator" of the waste (including the generator's identification number) must accompany the waste. 35 Ill. Adm. Code §§ 809.301, 809.501 (2012). The Act defines a generator as "any person whose act or process produces waste." 415 ILCS 5/3.205 (West 2008). The regulations define a special waste transporter as "any person who transports special waste from any location." 35 Ill. Adm. Code § 809.103 (2012).

¶ 59   On December 17, 2010, Illini picked up special waste from Tri-Rinse in Missouri. This fact is not in dispute. Therefore, Illini transported special waste. Tri-Rinse created a manifest to accompany the waste it generated. Upon accepting that waste, Illini terminated that manifest and substituted its own manifest. On this manifest, Illini identifies itself both as the transporter of the waste and as its generator. With this manifest, Illini hauled the waste to the Southern Illinois Regional Landfill in DeSoto, Illinois.

¶ 60    Illini's argument is simply that its actions violated no laws or regulations. Specifically, Illini contends that by picking up the waste for transport, Illini's role somehow changed and Illini became the waste's generator. Illini argues that this manner of labeling and handling of waste products is standard in the industry and accurately follows the waste from "cradle to grave." As defined above, a generator of waste is not merely the entity presently in charge of the waste, but is an entity that engages in an act or process–like a treatment–on the waste. Illini acknowledges that it did not treat or change the composition of the waste before delivering it to the landfill.

¶ 61    Despite Illini's argument that this type of manifest creation and labeling is standard in the waste industry, Illini did not comply with regulation 809.301 (35 Ill. Adm. Code § 809.301 (2012)) when it labeled itself as the generator of the waste. Irrespective of industry practice, that practice fails to comply with Illinois regulations and does not insulate Illini and other companies from liability for noncompliance. In this case, problems arose after the waste arrived at the landfill. The manifest used when the waste arrived at the landfill did not correctly list the generator of the waste, and so it required extra investigation by the EPA in order to locate the generator, identify the waste byproducts, and address the problems at the landfill.

¶ 62    Having considered all of the evidence, we find that the trial court's denial of Illini's summary judgment as to count II of its declaratory judgment complaint was correct and should be affirmed.

¶ 63        Merits of Count III of Illini's Declaratory Judgment Action

¶ 64    In count III, Illini contends that the EPA has no authority to post a notice of violation on its website prior to when the EPA refers the notice to the Attorney General for enforcement.  Illini cites to statutes argued as applicable by the EPA at the hearing. That statute provides in part that with respect to a notice of violation regarding any form of waste:

> "[T]he Agency shall annually publish a list of all such notices served.  The list shall include the date the investigation commenced, the date notice was sent, the date the matter was referred to the Attorney General, if applicable, and the current status of the matter."  415 ILCS 5/31(c)(1) (West 2008).

Illini concludes that this is the extent of what the EPA may do in the way of publication, and that no publication can occur until after the Attorney General is involved to enforce the notice of violation.  We find that Illini's interpretation of this statute is too narrow. While the Act mandates that the EPA publish an annual notice listing each notice of violation issued, section 31 of the Act contains no provision that would limit the EPA to one annual notice.  Furthermore, there is no requirement in section 31(c)(1) that the EPA can only include notices of violation that have gone to enforcement.

¶ 65    The public has great interest in the environment of our state.  Our legislature has declared that "environmental damage seriously endangers the public health and welfare" and that it is necessary to have a unified statewide program that exists in cooperation with other states and the federal government to protect our environment.  415 ILCS 5/2(a)(i), (ii) (West 2008).  The Environmental Protection Act grants authority to the EPA to

20

collect and disseminate information and data. *Granite City Division of National Steel Co.*, 155 Ill. 2d at 162, 613 N.E.2d at 725. That authority stems from section 4(b) of the Act, which mandates that the Agency "collect and disseminate such information, acquire such technical data, and conduct such experiments as may be required to carry out the purposes of this Act." 415 ILCS 5/4(b) (West 2008). In fact, all files, records, and data maintained by the Agency and the Board, as well as the Department of Natural Resources, must be open for public inspection and copying. 415 ILCS 5/7(a) (West 2008).

¶ 66 Accordingly, upon review of the law, we conclude that the trial court's denial of summary judgment on the matter of the EPA's publication of Illini's notice of violation was proper.

¶ 67 CONCLUSION

¶ 68 For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

¶ 69 Affirmed.

2014 IL App (5th) 130244

NO. 5-13-0244

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

ILLINI ENVIRONMENTAL, INC.,                   )      Appeal from the
                                              )      Circuit Court of
        Plaintiff-Appellant,                  )      St. Clair County.
                                              )
v.                                            )      No. 11-MR-178
                                              )
THE ENVIRONMENTAL                             )
PROTECTION AGENCY,                            )      Honorable
                                              )      Richard A. Aguirre,
        Defendant-Appellee.                   )      Judge, presiding.
_____

**Rule 23 Order Filed:**          August 11, 2014
**Motion to Publish Granted:**    October 3, 2014
**Opinion Filed:**                October 3, 2014
_____

**Justices:**        Honorable Melissa A. Chapman, J.

                     Honorable Thomas M. Welch, P.J., and
                     Honorable Judy L. Cates, J.,
                     Concur
_____

**Attorney**        Joseph M. Kellmeyer, Brian C. Stone, Thompson Coburn LLP,
**for**             One U.S. Bank Plaza, St. Louis, MO 63101
**Appellant**
_____

**Attorney**        Lisa Madigan, Attorney General, State of Illinois, Michael A.
**for**             Scodro, Solicitor General, Christopher M. R. Turner, Assistant
**Appellee**        Attorney General, 100 West Randolph Street, 12th Floor, Chicago,
                    IL 60601
_____